UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E. RÉMY MARTIN & CO.,

                Plaintiff,

vs.

SIRE SPIRITS LLC, VETROELITE INC., and
VETROELITE S.P.A.,

                Defendants.

21 CV 06838

**COMPLAINT AND JURY DEMAND**

Plaintiff E. RÉMY MARTIN & CO. ("Plaintiff") files this Complaint against Defendants SIRE SPIRITS LLC ("Sire"), VETROELITE INC. ("VETRO"), and VETROELITE S.P.A. ("VSPA") (collectively "Defendants"), alleging as follows:

**NATURE OF THIS ACTION**

1.    Plaintiff brings this action as a result of Defendants' willful infringement of United States Design Patent No. D638,649 (hereinafter the "D649 Patent"), attached as **Exhibit A**, in violation of the United States Patent Act.

2.    Plaintiff also brings this action to enforce its rights in its famous extra old ("XO") cognac bottle under Section 31(1) of the Lanham Act, 15 U.S.C. § 1114(1), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims under the statutory and common laws of the State of New York, all arising from Defendants' unauthorized use of Plaintiff's RÉMY BOTTLE mark. Plaintiff's bottle has a distinctive toroidal design with recessed center which, as evidenced by

multiple U.S. trademark registrations covering the design, has come to be associated exclusively with Plaintiff.  Through over three decades of use, millions of dollars in promotional expenditure and sales, unsolicited media attention and widely distributed photographs of multiple celebrities with its bottle, Plaintiff's bottle has not only acquired distinctiveness, but also fame.

3.      Defendants have willfully and blatantly designed their bottle to unfairly capitalize on the goodwill and reputation that Plaintiff's bottle has achieved and to unabashedly profit from its bad faith infringement.  Accordingly, Plaintiff seeks injunctive relief and monetary damages.

<u>**PARTIES**</u>

4.      Plaintiff is a Société par actions simplifée organized under the laws of France, with an address of 20 rue de la Société, Vinicole, F-16100, Cognac, France.

5.      Upon information and belief, Defendant Sire Spirits, LLC is a Delaware limited liability company with an established place of business at 399 Park Avenue, Suite 3600, New York, NY 10022.

6.      Defendant VETRO is a New York Corporation with an established place of business at 115 W 30th St., RM 402, New York, NY 10001 USA.

7.      Defendant VSPA is an Italian company with a place of business at Via I$^0$ Maggio, 4, 31024 Ormelle (Treviso) Italy.  Upon information and belief, Defendant VETRO is a United States subsidiary of Defendant VSPA and/or an alter ego of Defendant VSPA.  Both VETRO and VSPA are controlled by Mr. Daniele Feletto.  Mr. Feletto is the CEO of VETRO (as provided on the NYS Department of State Division of Corporations Entity Information) and he is also the Presidential and Commercial Manager of VSPA. *See* https://www.european-business.com/portraits/vetroelite-spa/wrapping-the-world-in-glass.  Mr. Feletto's address listed on the NYS Department of State Division of Corporations is the same address as VETRO.

Therefore, VSPA avails itself of this Judicial District by and through Mr. Felletto and VETRO as its commonly owned and controlled United States subsidiary.  On information and belief, VSPA ships product into the United States for consignment, purchase, and/or resale by VETRO.

## JURISDICTION AND VENUE

8.      This is an action in which Plaintiff seeks injunctive relief and damages arising from the Defendants' infringement of the Patent Act, 35 U.S.C. § 100 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and common law.  Defendants' illegal acts have irreparably harmed the goodwill and reputation of Plaintiff and have caused Plaintiff significant damage.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), as this action involves federal questions regarding the Defendants' violations of federal law, including the Patent Act and the Lanham Act.

10.     This Court has both general and specific jurisdiction over Sire, VETRO, and VSPA because each of Sire, VETRO, VSPA has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over each of the named Defendants would not offend traditional notions of fair play and substantial justice.

11.     Defendant Sire has committed and continues to commit acts of patent infringement and trademark infringement in this District, by, among other things, manufacturing, using, offering for sale, and selling infringing XO cognac bottles which copy patented and registered trade dress features of Plaintiff's proprietary cognac bottles and trade on Plaintiff's goodwill and fame.

12.     Defendant VSPA has committed and continues to commit acts of patent infringement and contributory trademark infringement in this District by and through its New York corporate subsidiary, VETRO, by, upon information and belief, among other things, manufacturing, using, offering for sale, and selling infringing XO cognac bottles which copy patented and trade dress features of Plaintiff's proprietary cognac bottles and trade on Plaintiff's goodwill and fame. VSPA and/or VETRO engage in such infringing conduct through or in conjunction with Defendant Sire in this judicial district.

13.     Venue is proper as to the Lanham Act and common law claims in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

14.     Venue is proper as to the Patent Act claim in this district pursuant to 28 U.S.C. § 1400(b) because Defendant Sire maintains a regular and established place of business in this district and committed acts of infringement in this District.

15.     Venue is proper as to the Patent Act claim in this district pursuant to 28 U.S.C. § 1400(b) because Defendant VETRO maintains a regular and established place of business in this district and committed acts of infringement in this District.

16.     Venue is proper as to the Patent Act claim in this district pursuant to 28 U.S.C. § 1391(c)(3) because Defendant VSPA is located in Italy.  *In re HTC Corp.*, 889 F.3d 1349, 1360 (Fed. Cir. 2018) ("a defendant not resident in the United States may be sued in any judicial district").  Furthermore, the controlling force behind Defendant VSPA, Mr. Feletto, has stated on the NYS Department of State Division of Corporations Entity Information that he can be found at 115 W 30th St., RM 402, New York, NY 10001 USA, which is located in this Judicial District.

4

## FACTUAL BACKGROUND

### History of the RÉMY XO BOTTLE and Associated Patents and Trademarks

17.    The Plaintiff's XO cognac is one of the most famous, prestigious, and prominent of the cognac brands produced in Cognac, France.  In 1981, Cellar Master André Giraud set out to create an XO cognac (one aged at least ten years) that would be among the very best Cognac Fine Champagne.  RÉMY MARTIN XO COGNAC was the result, coming exclusively from the highest-quality vineyards of Cognac, the Grande Champagne, and Petite Champagne.  Such origins offer exceptional aging potential and put the product in the class of Cognac Fine Champagne.

18.    From the inception of its sales, Plaintiff's XO cognac has been sold in a unique, toroidal shaped bottle (the "RÉMY BOTTLE").  A timeline dating from 1985 showing the bottle shapes introduced by Plaintiff in the United States is set forth below—all have the unique toroidal shape.



1985        1985        1993        2001        2004        2006        2015

19.    A closer look at the current RÉMY BOTTLE is below:



20.     Since the commencement of sales of Plaintiff's XO cognac in the RÉMY
BOTTLE, Plaintiff has vigorously protected the famous RÉMY BOTTLE.

21.     Specifically, Plaintiff is the owner of multiple U.S. trademark registrations for the
RÉMY BOTTLE.

22.     Plaintiff's oldest registration for a mark in issue in this litigation is the valid,
incontestable trademark registration, U.S. Registration No. 1,385,396, which issued on March 4,
1986 for the RÉMY BOTTLE in the following form:



23.     A true and correct copy of the registration certificate for U.S. Registration No.
1,385,396 is attached hereto as **Exhibit B**.

24.    Plaintiff is also the owner of valid, incontestable trademark registrations for the following marks:

| Mark | U.S. Registration No. | Date of Issuance |
|------|----------------------|------------------|
|  | 2,068,531 | June 10, 1997 |
|  | 3,436,246 | May 27, 2008 |
|  | 5,337,465 | November 21, 2017 |

25.    True and correct copies of the registration certificate for U.S. Registration Nos. 2,068,531, 3,436,246, and 5,337,465 are attached hereto as **Exhibits C, D,** and **E**, respectively.

26.     The trademark registrations for the RÉMY BOTTLE shown above are in full force and effect.

## The Market Dominance of the RÉMY BOTTLE

27.     Plaintiff promotes its famous RÉMY BOTTLE prominently in connection with the sales of its XO cognac.

28.     Plaintiff's RÉMY BOTTLE has achieved recognition nationally as a result of the dominant position of Plaintiff's XO cognac in the marketplace.  Specifically, Plaintiff's XO cognac sold in the RÉMY BOTTLE occupies second place in market share in the XO cognac market, with one quarter of the total sales in the US market.

29.     For the past five years alone, the Plaintiff's XO cognac sold in the RÉMY BOTTLE has resulted in sales of nearly 73 million dollars.

30.     Plaintiff's closest competitor in the XO cognac market is Hennesy XO, which has its own distinctive bottle shape.

31.     In the relevant market, bottle shapes are used to distinguish products from each other and to cultivate consumer recognition and identification of the bottle shape with a particular producer.

32.     According to a report by the National Alcohol Beverage Control Association, the total category volume breakdown of the XO cognac market in the United States is as follows:

| XO Cognac Brands | Market Share |
|---|---|
| Hennessy XO: | 65% |
| Rémy Martin XO: | 25% |
| Courvoisier XO: | 6% |
| Martell XO: | 2% |
| Other: | 2% |

33.     According to an Annual Brands Report by Drinks International, Plaintiff's XO cognac sold in the RÉMY BOTTLE is currently the second best-selling cognac worldwide, and

the top-trending cognac worldwide. The cover, table of contents, and relevant page of the Annual Brands Report is appended hereto as **Exhibit F**.

34.     As a result of the long and continued use of the RÉMY BOTTLE, and as evidenced by its dominant market position, Plaintiff is one of the premier manufacturers of XO cognac and its RÉMY BOTTLE has come to represent high quality, integrity, authenticity, and goodwill not only in the United States but around the world and is associated exclusively with Plaintiff.

## The Fame of the RÉMY BOTTLE

35.     The RÉMY BOTTLE is famous in the United States, and indeed, throughout the world, as a result of the extensive advertising, promotion, and sales over the past thirty-five years.

36.     Plaintiff has advertised its XO cognac in the RÉMY BOTTLE through, among other things, outdoor signage, including billboards and digital displays, promotions and advertising on television, streaming platforms and in print; digital marketing on numerous channels, including search and social media platforms; and its own website (www.remymartin.com); and social media channels.  Examples of these advertisements are appended hereto as **Exhibit G.**

37.     Plaintiff prominently features the RÉMY BOTTLE on its Facebook page (@RémyMartinUSA) where it has over 2.6 million followers.

38.     In the past five years alone, Plaintiff has spent over 15 million dollars promoting the XO cognac sold in the RÉMY BOTTLE.

39.     Such promotion has resulted in nearly 900 million impressions (the number of times a consumer encounters the advertisement that appears in print, on billboard or digital displays, or on a consumer's television, computer, tablet, phone, or other device).

40.     As further evidence of Plaintiff's fame and superior brand recognition as a result of its RÉMY BOTTLE, Plaintiff regularly receives unsolicited editorial coverage in various media sources across the United States.   Examples of such coverage are appended hereto as **Exhibit H.**

41.     The volume and frequency of the appearance of the RÉMY BOTTLE in a wide array of media publications demonstrate the worldwide recognition of the iconic RÉMY BOTTLE.   **Exhibits G** and **H** include press clippings showing the variety of publications and media channels featuring the RÉMY BOTTLE, including *Esquire, Forbes, Town and Country, The Wall Street Journal, The New York Times*, and *CNBC.com*.

42.     The XO cognac sold in the RÉMY BOTTLE has received a number of awards.   In 2010, it won a Gold medal at the 2010 Spirits Business Cognac Masters and Gold medals in 2014 and 2020 at the San Francisco World Spirit Competition.   In 2010, 2011, 2015, and 2017, the XO cognac sold in the RÉMY BOTTLE won Silver Awards at the International Wine & Spirit Competition.   In the past five years it has garnered five silver medals and one gold medal at the International Wine & Spirits Contest.   In 2020, the XO cognac sold in the RÉMY BOTTLE received a gold medal at the San Francisco World Spirit Competition, a silver medal at the International Wine & Spirit Competition, and a silver medal at the International Spirit Challenge.

43.     Plaintiff has formed partnerships with many brands and celebrities, including Jermaine Dupri, who, in 2018, was inducted into the Songwriters Hall of Fame and who has co-

written multiple number one rap and pop singles and produced multiple platinum albums; Danielle Chang, an author, cooking show host, and promoter of Asian American food and culture; Boi-1da, a prolific and award-winning songwriter and record producer who has collaborated with Drake, Rihanna, and Nicki Minaj; and Jackie Cruz, an actress, singer, and model who starred in the top television series *Orange is the New Black.*  These high-profile relationships have brought additional attention to, and contributed to the fame of, the RÉMY BOTTLE.

44. Celebrities have been featured with the RÉMY BOTTLE in unsolicited media. For example, the internationally renowned model Bella Hadid and her boyfriend, the Grammy Award winning musical artist, The Weeknd, have been captured together by paparazzi with the RÉMY BOTTLE.  Other celebrities who have garnered national attention and fame for the RÉMY BOTTLE include four-time NBA Champion and one of the greatest basket players of all time Lebron James; two-time NBA Champion Chris Bosch; Grammy Award winning and Primetime Emmy Award winning stand-up comedian, actor and producer Kevin Hart; race car driver Lewis Hamilton, who also raps under the pseudonym XNDA; the actress Bai Ling, known for her work on film and television, including the top television series *Entourage*  and *Lost;* and rapper and producer Boi-1da who has produced albums for Drake, Rihanna, Eminem, Jay-Z, and Nicki Manaj, among others.  Unsolicited photographs of these celebrities with the RÉMY BOTTLE are appended hereto as **Exhibit I.**

45. The RÉMY BOTTLE has also been featured in the music video for the song *Solita* performed by musical artists Ozuna, Bad Bunny Wisin, and Almighty.  This music video has received over 565 million views on YouTube since it was posted in January 2018.  A screenshot of the music video prominently featuring the RÉMY BOTTLE is shown below:



Ozuna x Bad Bunny x Wisin x Almighty X Dj Luian X Mambo Kingz - Solita
565,985,161 views · Jan 19, 2018

*See* https://www.youtube.com/watch?v=j-sz8M8gc6U.

46.     Further evidencing the fame of the brand and by association its distinctive bottle, Rémy Martin XO is also featured in the lyrics of the song *Cognac* released in 2018 by blues legend Buddy Guy and featuring Keith Richards and Jeff Beck.

> "Come on Keith, help yourself
>
> Rémy Martin XO
>
> I'm only playin' what I know
>
> Come on in here, Beck
>
> Stretch you neck and drink this XO with me
>
> Let me tell you 'bout this woman: when she'd get tight
>
> Give a double shot of Rémy Martin XO
>
> Bet you'll watch it rocket rise
>
> Talkin' 'bout Cognac
>
> XO Cognac that is
>
> And it goes right to your head
>
> Yes is do
>
> How well do I know"

47.     As a result of Plaintiff's expenditure of millions of dollars to promote its XO cognac in the RÉMY BOTTLE and the success it has enjoyed as evidenced by the millions of dollars in sales of the product in the United States, the RÉMY BOTTLE is distinctive, has become well known, and, indeed, famous, to the trade and members of the purchasing public, and has established substantial goodwill such that the public associates and identifies the XO cognac sold in the RÉMY BOTTLE with a single source of origin.

## Revolutionary Rémy Design

48.     On July 23, 2010, Sébastien Servaire invented a one-of-a-kind bottle design for Centaure de Diamant (the "DIAMANT BOTTLE") cognac.  Plaintiff filed for patent protection via the European Union Intellectual Property Office and registered this design as EM 001735457-0001 (the "EU Design").

49.     According to Plaintiff, the Centaure de Diamant was created by Cellar Master Pierrette Trichet to contain the most elegant eaux-de-vie from Rémy Martin's precious reserves, making it "the jewel of the Fine Champagne."  Servaire's bottle served as the unique container for this unique cognac.  The USPTO agreed that the DIAMANT BOTTLE was unique and issued U.S. Design Patent No. 638,649 to Plaintiff on May 31, 2011 (the "D649 Patent"):



50.     The DIAMANT BOTTLE is notable for its circular array of raised flat and angled quadrilateral and triangular facets arranged about a toroidal (wheel-like) body which converge towards one another to meet at a recessed, flat, centrally located circular surface.  The neck of the DIAMANT BOTTLE is a short cylinder that extends from the top of the toroidal body while a flat ovular bottom is located below that toroidal body.

51.     The DIAMANT BOTTLE was offered for sale in the United States in and around 2013, and can be purchased through online distributors, such as, for example, OnShoreCellars.com ([https://onshorecellars.com/products/remy-martin-centaure-de-diamant](https://onshorecellars.com/products/remy-martin-centaure-de-diamant), last visited August 10, 2021), Dream Works Duty Free ([https://www.dreamworksdutyfree.com/product/remy-martin-centaure-de-diamant-70cl/](https://www.dreamworksdutyfree.com/product/remy-martin-centaure-de-diamant-70cl/), last visited August 10, 2021), and Wine Style ([https://winestyleonline.com/products/Remy-Martin-Centaure-de-Diamant-gift-box.html](https://winestyleonline.com/products/Remy-Martin-Centaure-de-Diamant-gift-box.html), last visited August 10, 2021).

52.     The DIAMANT BOTTLE is associated with extremely high-quality cognac products and has garnered Plaintiff numerous awards, including a Tasting Gold Award, Best in

Class, at the 2011 International Wine and Spirit Competition as well as a gold medal at the 2013 International Wine and Spirit Competition.

## Defendants' Wrongful Conduct

53.     On December 17, 2019, Curtis J. Jackson III ("Jackson") filed a design patent application entitled "Beverage Bottle," an illustration of which is provided below:



See **Exhibit J** at 3 (copy of U.S. Design Patent Application No. 29/717,437 to Curtis J. Jackson III) (the "Branson Design Application").

54.     Upon information and belief, Jackson is a principal of Defendant Sire.

55.     Jackson asserted in the Branson Design Application that he "invented" the above design and that it was "new" and "original."  *Id.* at 1.

56.     Between December 2019 and February 2020, Defendant Sire instructed Defendants VETRO and VSPA to manufacture a cognac bottle in accordance with the drawing shown in the Branson Design Application and one or more of these Defendants either individually or in combination transported, distributed, advertised, marketed, offered for sale, and/or sold cognac in their own bottle under the "Branson" brand name, as shown below:



The above-pictured product, as well as any reference to "Branson" as a brand or bottle design, is hereafter referred to as the "INFRINGING BRANSON BOTTLE."

57.     On or about February 6, 2020, Defendant Sire applied to the U.S. Trademark Office to register a trademark covering the product design of the INFRINGING BRANSON BOTTLE.

58.     The U.S. trademark application for the design of the INFRINGING BRANSON BOTTLE was assigned Serial Number 88/788,224 (the "Sire Trademark Application").

59.     During prosecution of the Sire Trademark Application, Defendant Sire agreed that the following language properly described the INFRINGING BRANSON BOTTLE:

The mark consists of a three-dimensional product packaging design comprised of a clear bottle that has an ***overall circular, wheel-like shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets.*** However, ***the center of this wheel-like shape is a recessed, flat circle, having no facets*** and containing within it a gold circle that, in turn, contains a gold, stylized letter "B". Also, ***the bottom of the clear bottle design is flattened into an oval shape, and from the center and top of the clear bottle design arises a short, cylindrical neck***. The matter shown in dotted lines

is not claimed as a feature of the mark, but serves only to show the position of the mark with respect to the bottle as a whole. Likewise, the amber and brown liquid shown inside the bottle is not claimed as a feature of the mark and serves only to show the placement of the mark on the goods.

**Exhibit K** at 2 (Sept. 8, 2020 Response to Office Action on behalf of Defendant Sire) (emphasis added).

60.     In that same September 8, 2020 Response to Office Action, Defendant Sire represented that the INFRINGING BRANSON BOTTLE "was custom designed by Curtis Jackson." *Id.* at 1-2.  Defendant Sire also wrote, "[t]he bottles are manufactured by a high-quality glass designer in Italy, Vetroelite." *Id.* at 2.

61.     On information and belief, Defendant Sire made the aforementioned representations with knowledge or with willful blindness of RÉMY's iconic toroidal-shaped cognac bottle and brand.

62.     On information and belief, Defendant Sire made the aforementioned representations with knowledge or with willful blindness of the D649 Patent.

63.     On information and belief, Defendant Sire made the aforementioned representations with knowledge or with willful blindness of the trademark registrations covering the RÉMY BOTTLE.

64.     Defendant VSPA is the assignee of at least 18 United States Design Patents and numerous other applications filed worldwide, including in the European Union Intellectual Property Office.   On information and belief, Defendants VSPA and VETRO knew or deliberately disregarded the risk that the INFRINGING BRANSON BOTTLE was a copy of the DIAMANT BOTTLE, which was patent protected in the United States with the D649 Patent and

was also a registered EU Design, which through reasonable diligence would have informed Defendants VSPA and VETRO of the D649 Patent.

65.     Defendants VETRO and VSPA are in the business of the design and manufacture of high-end glass bottles and containers, including for liqueurs and spirits.  Based on the nature of their business and the worldwide renown and unique fame of the RÉMY BOTTLE, Defendants VETRO and VSPA knew or had reason to know of the protectable and registered trade dress of the RÉMY BOTTLE.

66.     On information and belief, Defendants VETRO and VSPA manufactured, used, and/or transported the INFRINGING BRANSON BOTTLE into the United States with knowledge or with willful blindness of the D649 Patent.

67.     On information and belief, Defendants VETRO and VSPA knew or had reason to know that the INFRINGING BRANSON BOTTLE directly infringed on the RÉMY BOTTLE and, by manufacturing, selling, and/or transporting the INFRINGING BRANSON BOTTLE into the United States, intentionally induced third-party sellers and/or distributors to perpetuate the infringing conduct by placing an instrument of consumer deception in the hands of U.S.

68.     On information and belief, despite having knowledge or constructive knowledge of Defendant Sire's infringing use and sale of the INFRINGING BRANSON BOTTLE, Defendants VETRO and VSPA continued to provide manufacturing services to Defendant Sire for the production of the INFRINGING BRANSON BOTTLE and continued to supply the INFRINGING BRANSON BOTTLE to third-party sellers and/or distributors in the U.S.

69.     On information and belief, Defendants VETRO and VSPA have taken no action to discourage Defendant Sire or third-party distributors and sellers from offering for sale, advertising, promoting, distributing, or selling the INFRINGING BRANSON BOTTLE.

70.     Since at least the beginning of 2020, one or more of the Defendants have transported, distributed, advertised, marketed, offered for sale, and/or sold products infringing on the trademark registrations in the RÉMY BOTTLE and infringing the D649 Patent.

71.     In a blatant attempt to trade off the hard-earned goodwill and reputation of the RÉMY BOTTLE, Defendants' INFRINGING BRANSON BOTTLE is being used and is used to create a likelihood of consumer confusion.  Consumers will inevitably be confused in view of the stark similarities between the bottles, as is apparent when comparing the INFRINGING BRANSON BOTTLE to the iconic RÉMY BOTTLE, as shown below:

RÉMY BOTTLE                    INFRINGING BRANSON BOTTLE

 

72.     Consumers have remarked on these similarities on social media, further demonstrating the harm to Plaintiff.  For example, Instagram users have acknowledged the close resemblance of Plaintiff's iconic cognac bottles to the INFRINGING BRANSON BOTTLE, demonstrating how Defendants' wrongful actions have diluted the exclusive association of the RÉMY BOTTLE with Plaintiff.  One such user wrote the following in response to a post by Jackson: "How you gonna use the @boscovs symbols and throw it on a ***fake remy-xo bottle.***" (emphasis added).



*See* https://www.instagram.com/p/CAUUPO8nujd/ (emphasis added).

73.     Further, third-party media has also recognized the striking similarity between the RÉMY BOTTLE and the INFRINGING BRANSON BOTTLE.  In referring to Jackson and Defendant Sire, one website observes "there's a strong possibility 50 can capitalize off the popularity of Cognac brands such as *Rémy Martin*…"  *See* https://www.hotnewhiphop.com/50-cent-inks-deal-with-branson-cognac-news.48917.html.

74.     On information and belief, Defendants' INFRINGING BRANSON BOTTLE was offered based on Defendants' recognition of the limited offering of the DIAMANT BOTTLE in the United States.  Exploiting a consumer base cultivated by Plaintiff, Defendants used this opportunity to infiltrate Plaintiff's marketspace with their own cheaper version of the DIAMANT BOTTLE.

75.     On information and belief, Defendants disregarded Plaintiff's rights in the D649 Patent and forged ahead with the marketing, sale, and distribution of the INFRINGING BRANSON BOTTLE.

76.    The D649 Patent, the Branson Design Application, and the INFRINGING BRANSON BOTTLE are so substantially similar that they are nearly indistinguishable, as shown below in a side-by-side comparison:

D649 Patent            INFRINGING BRANSON BOTTLE            Branson Design Application



77.    Defendants even describe the INFRINGING BRANSON BOTTLE with language that  captures the claim of the D649 Patent, namely, calling it a bottle with an "overall circular, wheel-like shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets[,]…the center of this wheel-like shape is a recessed, flat circle, having no facets and … the bottom of the clear bottle design is flattened into an oval shape, and from the center and top of the clear bottle design arises a short, cylindrical neck." See **Exhibit K** at 2.

78.    Defendants' INFRINGING BRANSON BOTTLE bears a striking resemblance to the RÉMY BOTTLE, not to mention its near exact reproduction of the DIAMANT BOTTLE and the D649 Patent.

79.    Defendants knew or should have known that Plaintiff, not Jackson, innovated the toroidal, faceted design which Defendants have converted into the INFRINGING BRANSON BOTTLE and is the subject of the Branson Design Application.

21

80.     Upon information and belief, no other party is offering cognac in the United States in a bottle having a toroidal body and recessed center like that of the RÉMY BOTTLE and the D649 Patent, other than Defendants.

81.     Defendants are not licensed by Plaintiff and are not authorized by Plaintiff to use the RÉMY BOTTLE for any of Defendants' goods.

82.     Plaintiff has not granted a license or any other authorization to Defendants to make use, offer for sale, sell or import bottles that embody the toroidal, faceted and central-recessed design patented in the D649 patent and which is proprietary to Plaintiff, particularly in relation to its RÉMY BOTTLE and DIAMANT BOTTLE.

83.     Defendants' use of the INFRINGING BRANSON BOTTLE commenced long after Plaintiff's use and extensive worldwide advertising of the RÉMY BOTTLE and well after the RÉMY BOTTLE's achievement of fame in the marketplace.

84.     The continued offering for sale and sale of infringing goods by Defendants will lead to confusion as to the source between Defendants' product and the genuine XO cognac sold in the RÉMY BOTTLE.  Additionally, such actions will dilute the distinctiveness of the RÉMY BOTTLE by blurring consumers' exclusive association of that bottle with Plaintiff.

85.     Plaintiff has been damaged by the foregoing infringing and wrongful acts of Defendants, including, without limitation, suffering actual damages.

86.     Defendants' unlawful manufacturing and selling of the INFRINGING BRANSON BOTTLE was not discovered by Plaintiff until summer of 2020, less than one year from the filing of this complaint.

87.     Defendants' wrongful conduct and infringing activities will continue unless enjoined by this Court.

## CAUSES OF ACTION

## COUNT I

**Direct Infringement of U.S. Design Patent No. 638,649 Pursuant To 35 U.S.C. § 271(a)
(Against All Defendants)**

88.     Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

89.     Plaintiff is the lawful owner of all right, title, and interest in and to the D649 Patent.

90.     Defendants have infringed and continue to infringe the D649 Patent literally and/or under the doctrine of equivalents by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of New York and within this District, products infringing the ornamental design covered by the D649 Patent in violation of 35 U.S.C. § 271, including but not limited to Defendants' INFRINGING BRANSON BOTTLE.

91.     Defendants infringe the D649 Patent literally and under the doctrine of equivalents because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the D649 Patent and the INFRINGING BRANSON BOTTLE are each substantially the same clear bottle having an overall circular, toroidal (wheel-like) shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets. They are also substantially the same in that the center of their bottle's toroidal body is a recessed, flat circle, having no facets with a bottom that is flattened into an oval shape, and from the center and top of the toroidal body arises a short, cylindrical neck.  The resemblance of the claim of D649 Patent in the INFRINGING BRANSON BOTTLE is so substantially similar that it deceives the ordinary observer, inducing him to purchase one supposing it to be the other.

23

92.     To the extent there are any differences in features between the D649 Patent claim and the INFRINGING BRANSON BOTTLE, those differences involve features of the INFRINGING BRANSON BOTTLE that are either insignificant when compared to the totality of the D649 Patent claim or substantially similar ornamental equivalents of the comparable features claimed in the D649 Patent.

93.     Defendants' acts of infringement of the D649 Patent were undertaken without authority, permission or license from Plaintiff.  Defendants' infringing activities violate 35 U.S.C. § 271.

94.     Defendants have engaged in a pattern of conduct demonstrating: Defendants' willful blindness of the D649 Patent; the objectively high likelihood that Defendants' actions constitute infringement of the D649 Patent and that the D649 Patent is valid and enforceable; and that this objectively defined risk was so obvious that Defendants knew or should have known that their pattern of conduct would infringe or induce others to infringe the D649 Patent.

95.     Defendants' infringement has damaged and continues to damage and injure Plaintiff. The injury to Plaintiff is irreparable and will continue unless and until Defendants are enjoined from further infringement.

96.     Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendants from the unlawful conduct alleged herein, including without limitation, Defendants' total profit from the manufacture, use, sale, and offer to sell the INFRINGING BRANSON BOTTLE pursuant to 35 U.S.C. § 289.

97.     Defendants have engaged and are engaged in willful and deliberate infringement of the D649 Patent.  Such willful and deliberate infringement justifies an increase of three times

the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

98.     Plaintiff is entitled to a permanent injunction preventing Defendants from further infringing the D649 Patent.

## COUNT II

**Indirect Infringement of U.S. Design Patent No. 638,649 Pursuant To 35 U.S.C. § 271(b)**
**(Against All Defendants)**

99.     Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

100.    In addition to directly infringing the D649 Patent in New York, Defendants indirectly infringe the D649 Patent in New York pursuant to 35 U.S.C. § 271(b).

101.    Defendants knowingly and actively aided and abetted the direct infringement of the D649 Patent by instructing and encouraging customers, purchasers, users, and manufacturers, including Defendants VETRO and VSPA, to make and use the INFRINGING BRANSON BOTTLE.  Such instructions and encouragement included, but are not limited to, advising one or more Defendants and/or third parties to use the INFRINGING BRANSON BOTTLE in an infringing manner, providing a mechanism through which one or more Defendants and/or third parties may infringe the D649 Patent, and by advertising and promoting the use of the INFRINGING BRANSON BOTTLE in an infringing manner.

102.    One or more of Defendants knew or were willfully blind to the fact that they were inducing others, including one or more of the other Defendants, customers, purchasers, users and manufacturers to infringe by making and/or using either themselves or in conjunction with Defendants, embodiments of the D649 Patent claim.

103.    Defendants' acts of infringement of the D649 Patent were undertaken without authority, permission or license from Plaintiff.  These infringing acts of Defendants and/or Defendants' customers, purchasers, users and manufacturers violate 35 U.S.C. § 271(a) and (b). Those infringing activities have damaged and continue to damage and injure Plaintiff. The injury to Plaintiff is irreparable and will continue unless and until Defendants and their customers, purchasers, and users are enjoined from further infringement.

104.    Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendants and their customers, purchasers, users, and manufacturers from the unlawful conduct alleged herein, including without limitation, Defendants' total profit from the manufacture, use, sale, and offer to sell the INFRINGING BRANSON BOTTLE pursuant to 35 U.S.C. § 289.

105.    Defendants have engaged and are engaged in willful and deliberate infringement of the D649 Patent.  Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

106.    Plaintiff is entitled to a permanent injunction preventing Defendants from further inducing infringement of the D649 Patent.

**COUNT III**

**Indirect Infringement of U.S. Design Patent No. 638,649 Pursuant To 35 U.S.C. § 271(c)
(Against All Defendants)**

107.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

108.    In addition to directly infringing the D649 Patent in New York, Defendants indirectly infringe the D649 Patent in New York pursuant to 35 U.S.C. § 271(c).

109.    Defendants knowingly and actively aided and abetted the direct infringement of the D649 Patent by instructing and encouraging customers, purchasers, users, and manufacturers, including Defendants VETRO and VSPA, to make and use the INFRINGING BRANSON BOTTLE.  Such instructions and encouragement included, but are not limited to, advising one or more Defendants and/or third parties to use the INFRINGING BRANSON BOTTLE in an infringing manner, providing a mechanism through which one or more Defendants and/or third parties may infringe the D649 Patent, and by advertising and promoting the use of the INFRINGING BRANSON BOTTLE in an infringing manner.

110.    One or more of Defendants knew or were willfully blind to the fact that they were contributing to others' (including one or more of the other Defendants, customers, purchasers, users, and manufacturers) infringement of the D649 Patent claim.

111.    Defendants' acts of infringement of the D649 Patent were undertaken without authority, permission or license from Plaintiff.  These infringing acts of Defendants and/or Defendants' customers, purchasers, users and manufacturers violate 35 U.S.C. § 271(a), (b), and (c).  Those infringing activities have damaged and continue to damage and injure Plaintiff. The injury to Plaintiff is irreparable and will continue unless and until Defendants and their customers, purchasers, and users are enjoined from further infringement.

112.    Defendants and their customers, purchasers, users, and manufacturers know or willfully blind themselves from knowledge that the INFRINGING BRANSON BOTTLE is especially made or adapted to be used in an infringement of the D649 Patent.

113.    Defendants and their customers, purchasers, users, and manufacturers know or willfully blind themselves from knowledge that the INFRINGING BRANSON BOTTLE is not a staple article of commerce suitable for substantial non-infringing uses.

114.    Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendants and their customers, purchasers, and users from the unlawful conduct alleged herein, including without limitation, Defendants' total profit from the manufacture, use, sale, and offer to sell the INFRINGING BRANSON BOTTLE pursuant to 35 U.S.C. § 289.

115.    Defendants have engaged and are engaged in willful and deliberate infringement of the D649 Patent.  Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

116.    Plaintiff is entitled to a permanent injunction preventing Defendants from further infringing the D649 Patent.

## COUNT IV

**Violation of Section 32(1) of the Lanham Act**
**(Against Defendant Sire)**

117.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

118.    Defendant Sire's distribution, advertisement, offering for sale, and sale of the INFRINGING BRANSON BOTTLE constitute a use in commerce that is likely to continue to

cause confusion, to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

119.    Defendant Sire's use of the INFRINGING BRANSON BOTTLE commenced well after Plaintiff's use and extensive worldwide advertising of the RÉMY BOTTLE.

120.    Upon information and belief, the activities of the Defendant Sire in selling XO cognac in the INFRINGING BRANSON BOTTLE have been done with the express intention of confusing, misleading, and deceiving purchasers and members of the public into believing they are purchasing Plaintiff's products.

121.    Defendant Sire's activities were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's prior rights in the RÉMY BOTTLE and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

122.    Plaintiff has no adequate remedy at law.  Defendant Sire's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

123.    Due to Defendant Sire's violations of the Lanham Act, Plaintiff is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial, attorneys' fees, costs, and disbursements.

## COUNT V

### Violation of the Section 43(c) Lanham Act (Federal Trademark Dilution Act)
### (Against Defendant Sire)

124.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

125. Section 43(c) of Lanham Act, known as the Federal Trademark Dilution Act, provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

126. The RÉMY BOTTLE is distinctive and a famous mark within the meaning of Section 43(c) and known worldwide and throughout the United States.

127. The RÉMY BOTTLE has been in use for over 35 years and became distinctive and famous well before Defendants' wrongful acts alleged herein.

128. Defendant Sire's use of the INFRINGING BRANSON BOTTLE is likely to cause dilution by blurring the exclusive association consumers have when exposed to the RÉMY BOTTLE, that is, consumer identification of the RÉMY BOTTLE as originating from a single source, namely Plaintiff.

129. Therefore, Defendant Sire's use of the INFRINGING BRANSON BOTTLE is likely to blur the distinctiveness of the RÉMY BOTTLE.

130. Plaintiff has no adequate remedy at law. Defendant Sire's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

131.   Due to Defendant Sire's violations of the Federal Trademark Dilution Act, Plaintiff is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial, attorneys' fees, costs, and disbursements.

## COUNT VI

### Violation of Section 43(a) of the Lanham Act
### (Against Defendant Sire)

132.   Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

133.   Section 43(a)(1) of the federal Lanham Trademark Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which — (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or — (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C.A. § 1125(a).

134.   Defendant Sire's distribution, advertisement, offering for sale, and sale of XO cognac in the INFRINGING BRANSON BOTLE constitute false designations of origin, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Sire's product with Plaintiff, or as to the origin, sponsorship, or approval of Defendant Sire's products by Plaintiff, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

135.   Upon information and belief, the activities of the Defendant Sire in selling such infringing products have been done with the express intention of confusing, misleading, and

deceiving purchasers and members of the public into believing they are purchasing Plaintiff's products.

136.   Defendant Sire's actions have continued in spite of the Defendants' knowledge that the use of any of Plaintiff's trademarks, or any reproductions, counterfeits, copies, or colorable imitations of such trademarks, is in violation of Plaintiff's rights.

137.   Defendant Sire's actions were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's legal rights.

138.   Plaintiff has no adequate remedy at law.  Defendant Sire's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

139.   Due to Defendant Sire's violations of the Lanham Act, Plaintiff is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial, attorneys' fees, costs, and disbursements.

## COUNT VII

### Contributory Trademark Infringement
### (Against Defendants VETRO and VSPA)

140.   Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

141.   Defendants VETRO's and VSPA's conduct, i.e., intentionally inducing third-party sellers and/or distributors to infringe the RÉMY BOTTLE by, upon information and belief, supplying, manufacturing, selling, and/or transporting the INFRINGING BRANSON BOTTLE to said sellers and/or distributors for sale to consumers in the United States, constitutes

contributory trademark infringement under the Lanham Act and the common law of the State of New York.

142.     Defendants VETRO's and VSPA's conduct, i.e., upon information and belief, continuing to provide manufacturing services to Defendant Sire and to supply, sell, and/or transport the INFRINGING BRANSON BOTTLE to third-party sellers and/or distributors in the United States, despite having knowledge or reason to know that Defendant Sire is engaging in trademark infringement of the RÉMY BOTTLE, constitutes contributory trademark infringement in violation of the Lanham Act and the common law of the State of New York.

143.     Defendants VETRO's and VSPA's actions were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's legal rights.

144.     Plaintiff has no adequate remedy at law.  Defendants VETRO's and VSPA's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

## COUNT VIII

**Declaration Denying U.S. Trademark Application or Directing Defendant
Sire to Abandon U.S. Trademark Application
Serial No. 88/788,224 for the INFRINGING BRANSON BOTTLE
(Against Defendant Sire)**

145.     Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

146.     The INFRINGING BRANSON BOTTLE is very similar to the RÉMY BOTTLE such that use of the INFRINGING BRANSON BOTTLE is likely to cause confusion or mistake or deceive consumers as to whether Plaintiff is affiliated with, sponsors or endorses the sale of the XO cognac in the INFRINGING BRANSON BOTTLE.

147.    The registrability of the INFRINGING BRANSON BOTTLE is directly related to the subject matter of this action, namely the trademark infringement and dilution of the RÉMY BOTTLE by the INFRINGING BRANSON BOTTLE.

148.    The RÉMY BOTTLE is the subject of multiple U.S. trademark registrations.

149.    Accordingly, under 15 U.S.C. § 1119, and its other authority, this Court should deny U.S. trademark application Serial Number 88/788224.   Alternatively, this Court should direct Defendant Sire to abandon, with prejudice, Serial Number 88/788224.

150.    Additionally, this Court should enjoin Defendants, their successors, privies and assigns, and any person or entity acting on their behalf or in concert with them from filing any application with the U.S. Trademark Office for the INFRINGING BRANSON BOTTLE or any bottle confusingly similar thereto.

## COUNT IX

### Common Law Trademark Infringement
### and Unfair Competition Claim Under New York Law
### (Against Defendant Sire)

151.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

152.    Plaintiff's RÉMY BOTTLE is a valid and legally protectable mark and is used in commerce in connection with XO cognac.

153.    There is a likelihood of confusion arising from Defendants' use of the INFRINGING BRANSON BOTTLE for XO cognac.

154.    Defendants' use of the INFRINGING BRANSON BOTTLE constitutes common law trademark infringement and unfair competition, in violation of New York law.

## COUNT X

### Contributory Trademark Infringement
### (Against Defendants VETRO and VSPA)

1. Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

2. Defendants VETRO's and VSPA's conduct, i.e., intentionally inducing third-party sellers and/or distributors to infringe the RÉMY BOTTLE by, upon information and belief, supplying, manufacturing, selling, and/or transporting the INFRINGING BRANSON BOTTLE to said sellers and/or distributors for sale to consumers in the United States, constitutes contributory trademark infringement under the Lanham Act and the common law of the State of New York.

3. Defendants VETRO's and VSPA's conduct, i.e., upon information and belief, continuing to provide manufacturing services to Defendant Sire and to supply, sell, and/or transport the INFRINGING BRANSON BOTTLE to third-party sellers and/or distributors in the United States, despite having knowledge or reason to know that Defendant Sire is engaging in trademark infringement of the RÉMY BOTTLE, constitutes contributory trademark infringement in violation of the Lanham Act and the common law of the State of New York.

4. Defendants VETRO's and VSPA's actions were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's legal rights.

5. Plaintiff has no adequate remedy at law.  Defendants VETRO's and VSPA's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

## COUNT XI

**Injury to Business Reputation; Dilution under N.Y. Gen. Bus. Law § 360-l**
**(Against Defendant Sire)**

6.      Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

7.      The RÉMY BOTTLE has acquired distinctiveness.

8.      The INFRINGING BRANSON BOTTLE is substantially similar to the RÉMY BOTTLE.

9.      Defendants' imitation, reproduction, counterfeiting, copying and/or use of the INFRINGING BRANSON BOTTLE has injured and, unless enjoined, is likely to continue to injure Plaintiff's business reputation and/or likely to dilute the distinctive quality of the RÉMY BOTTLE in violation of Section 360-l of the New York General Business Law.

10.     Plaintiff has no adequate remedy at law.  Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

11.     Due to Defendant's violations of New York law, Plaintiff is entitled to injunctive and equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.      A judgment entered in favor of Plaintiff on its claim that each of Defendant Sire, Defendant VETRO, and Defendant VSPA has infringed the D649 patent;

B.      A judgment entered in favor of Plaintiff on its claim that Defendant Sire has infringed and diluted Plaintiff's RÉMY BOTTLE trademark;

C.      A judgment entered in favor of Plaintiff on its claim that each of Defendant VETRO and Defendant VSPA has contributorily infringed Plaintiff's RÉMY BOTTLE trademark;

D.      A permanent injunction restraining the Defendants from:

    i.      making, importing, using, selling, and offering to sell infringing products practicing the D649 Patent and from otherwise infringing, contributing to infringement of, and actively inducing infringement of the D649 Patent;

    ii.     directly or indirectly infringing Plaintiff's registered or common-law trademarks for the RÉMY BOTTLE in any manner, including but not limited to, manufacturing, distributing, advertising, selling, or offering for sale any products that infringe the RÉMY BOTTLE; and

    iii.    using the RÉMY BOTTLE or any reproduction, counterfeit, copy, or colorable imitation of such mark in connection with the manufacture, distribution, advertising, display, marketing, sale, offering for sale, or other use of any product; and

    iv.     using any trade dress, labeling, or bottle design which is a reproduction, counterfeit, copy, or colorable imitation of the RÉMY BOTTLE for its products in connection with the manufacture, distribution, advertising, display, marketing, sale, offering for sale, or other use of any product;

E.      An Order that Plaintiff be authorized to seize any other products that reproduce, copy, counterfeit, or imitate RÉMY BOTTLE, including the INFRINGING BRANSON BOTTLE, which are in Defendants' possession, custody, or control;

F.      An Order directing the U.S. Trademark Office to refuse, or the Defendant Sire Spirits LLC to abandon, U.S. Trademark Application Serial No. 88/788224 and directing Defendants, their successors, privies and assigns, and any person or entity acting on their behalf or in concert with one or both of them, to refrain from filing any new U.S. trademark applications for the INFRINGING BRANSON BOTTLE or a bottle confusingly similar thereto;

G.      A judgment and order that Defendants make an accounting to Plaintiff and pay over to Plaintiff:

          i.   the extent of Defendants' total profits and revenues realized and derived from its infringement of the D649 Patent and Plaintiff's RÉMY BOTTLE trademark, and actual damages to Plaintiff in an amount not less than a reasonable royalty for Defendants' infringements;

          ii.   exemplary, compensatory punitive, and/or treble damages pursuant to 35 U.S.C. § 284 for Defendants' malicious, willful, and deliberate infringement, and as permitted under other applicable laws;

H.      An Order deeming this case an exceptional case pursuant to 15 U.S.C. § 1117(a) and (b) and 35 U.S.C. § 285, and that Defendant Sire be deemed liable for and be ordered to pay Plaintiff, in addition to the aforesaid damages, Plaintiff's costs and attorneys' fees, and that the amount of actual damages be trebled; and

I.      Such other and further relief as the Court may deem just and necessary.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by a jury on all issues so triable.

Respectfully submitted,

Joseph Farco
jfarco@norris-law.com

Jeanne Hamburg
jhamburg@norrislaw.com

Bruce S. Londa
bslonda@norris-law.com

David H. Siegel
dsiegel@norris-law.com

NORRIS MCLAUGHLIN, P.A.
7 Times Square, 21st Floor
New York, NY 10036
212-808-0700

**ATTORNEYS FOR PLAINTIFF
E. RÉMY MARTIN & CO.**

39