UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                       :

E. RÉMY MARTIN & CO.,          :

                                   :

                  Plaintiff, :

    -against-                 :

                                   :

SIRE SPIRITS LLC, VETROELITE INC., and :
VETROELITE S.P.A.,           :

                                   :

                  Defendants. :

                                   :

-------------------------------------------------------- X

**ORDER DENYING IN PART
AND GRANTING IN PART
MOTIONS TO DISMISS THE
COMPLAINT**

21 Civ. 6838 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiff E. Rémy Martin & Co. ("Plaintiff") brings this suit for infringement of a design patent, U.S. Design Patent No. 638,649 (the "'649 Patent"), and four United States Patent and Trademark Office ("USPTO") registrations against Defendants Sire Spirits LLC ("Sire"), and Vetroelite Inc. ("VETRO"), and Vetroelite S.P.A. ("VSPA") (the "VETRO Defendants"), (collectively "Defendants.) *See* ECF No. 1. ("Compl.").[1]  VSPA moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), and Sire and the VETRO Defendants each move to dismiss the complaint for failure to state a claim under Rule 12(b)(6).  ECF Nos. 28, 35.  For the reasons provided below, the motions are granted in part and denied in part.

---

[1] Plaintiff's claims include: (i) direct infringement of the '649 Patent, pursuant to 35 U.S.C. § 271(a) against all Defendants; (ii) indirect infringement of the '649 Patent, pursuant to 35 U.S.C. § 271(b) against all Defendants; (iii) indirect infringement of the '649 Patent, pursuant to 35 U.S.C. § 271(c) against all Defendants; (iv) violation of Section 32(1) of the Lanham Act against Sire; (v) violation of Section 43(c) of the Lanham Act against Defendant Sire; (vi) violation of Section 43(a) of the Lanham Act against Defendant Sire; (vii) contributory trademark infringement against Defendants VETRO and VSPA; (viii) a declaration denying Defendant Sire's U.S. Trademark Application Serial No. 88/788,224 or directing it to abandon; (ix) common law trademark infringement and unfair competition under New York law against Defendant Sire; and (x) injury to business reputation and dilution under New York Gen. Bus. Law § 360-1 against Defendant Sire.  Plaintiff also brings a duplicative count for contributory trademark infringement against VETRO and VSPA.

1

**BACKGROUND**

The Complaint alleges the facts as follow, which I accept as true for the purposes of deciding this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is French manufacturer of XO cognac and has the second largest market share in the U.S. cognac market. Compl. ¶ 28. In this market, bottle shapes are used to distinguish products from each other and to cultivate consumer recognition and identification of the bottle shape with a particular producer. *Id.* ¶ 31. To that end, dating back to the introduction of its cognac into the U.S. market, Plaintiff has promoted and sold its cognac in a toroidal[2] shaped bottle (the "Rémy Bottle"), for which Plaintiff has obtained four trademark registrations:

---

[2] Toroidal means shaped like a donut. *See* http://www.merriam-webster.com/dictionary/toroidal.

| Mark | U.S. Registration Number | Date of Issuance |
|------|--------------------------|------------------|
|  | 1,385,396 | March 4, 1986 |
|  | 2,068,531 | June 10, 1997 |
|  | 3,436,246 | May 27, 2008 |

|  | 5,337,465 | November 21, 2017 |

**FIGURE 1**

*Id.* Exhibits B, C, D, E, ECF Nos. 1-2, 1-3, 1-4, 1-5. All of the bottle shapes that Plaintiff has

introduced in the United States, dating back to 1985, bear the toroidal shape:



**FIGURE 2**

*Id.* ¶ 18.

The current Rémy Bottle is as follows:



**FIGURE 3**

*Id.* ¶ 19.

4

Plaintiff has engaged in extensive advertising, promotion, and sales over the past thirty-five years. *Id.* ¶ 35. It has advertised its XO cognac in the Rémy Bottle through outdoor signage, television ads, and online channels, including its own websites and Facebook page where it has over 2.6 million followers. *Id.* ¶¶ 36–37. In the past five years alone, Plaintiff has spent over 15 million dollars to promote the XO cognac sold in the Rémy Bottle, resulting in nearly 900 million impressions. *Id.* ¶¶ 38–39; Ex. G. The Rémy Bottle has appeared in a wide array of media publications, including *Esquire*, *Forbes*, *Town and Country*, *The Wall Street Journal*, *The New York Times*, and *CNBC.com* received numerous awards, been featured in music videos and in the lyrics of the song *Cognac* released in 2018 by blues legend Buddy Guy and featuring Keith Richards and Jeff Beck. *Id.* ¶¶ 40–42, 45, 46.; Exs. G, H.

On July 23, 2010, Sébastian Servaire invented the Centaure de Diamant design (the "Diamant Bottle") to contain one of Plaintiff's reserve cognacs. *Id.* ¶ 48. Plaintiff applied for, and received, patents from the European Union Intellectual Property Office, EM 001735457-0001, and the USPTO, U.S. Design Patent No. 638,649 (the " '649 Patent"). *Id.* ¶¶ 48–49. A picture of the Diamant Bottle and the patented design appear as follows:

 

**FIGURE 4**

*Id.* ¶ 49.

The Diamant Bottle was first sold in the U.S. in and around 2013, and

"is notable for its circular array of raised flat and angled quadrilateral and triangular facets arranged about a toroidal (wheel-like) body which converge towards one another to meet at a recessed, flat, centrally located circular surface. The neck of the DIAMANT BOTTLE is a short cylinder that extends from the top of the toroidal body while a flat ovular bottom is located below that toroidal body."

*Id.* ¶¶ 50–51.

On December 17, 2019, Curtis J. Jackson III ("Jackson"),[3] a principal of Sire,

filed a design patent application entitled "Beverage Bottle," which included the following

illustration:

---

[3] Curtis James Jackson III is known professionally as 50 Cent.  *See* https://en.wikipedia.org/wiki/50_Cent.



**FIGURE 4**

Jackson asserted that he "invented" the design and that it was "new" and "original." *Id.* ¶ 55. Between December 2019 and February 2020, Sire instructed VETRO and VSPA to manufacture a cognac bottle in accordance with the drawing shown in the design application and one or more of these Defendants either individually or in combination transported, distributed, advertised, marketed, offered for sale, and/or sold cognac in their own bottle under the "Branson" brand name, as shown below (hereafter, the "Branson Bottle"):



**FIGURE 5**

*Id.* ¶ 56.

On or about February 6, 2020, Sire applied to the U.S. Trademark Office to register a trademark covering the product design of the Branson Bottle and was assigned Serial Number 88/788,224 (the "Sire Trademark Application").  *Id.* ¶¶ 57–58.  During the prosecution of the Sire Trademark Application, Sire agreed that the following language properly described the Branson Bottle:

> The mark consists of a three-dimensional product packaging design comprised of a clear bottle that has an overall circular, wheel-like shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets. However, the center of this wheel-like shape is a recessed, flat circle, having no facets and containing within it a gold circle that, in turn, contains a gold, stylized letter "B". Also, the bottom of the clear bottle design is flattened into an oval shape, and from the center and top of the clear bottle design arises a short, cylindrical neck.  The matter show in dotted lines is not claimed as a feature of the mark, but serves only to show the position of the mark with respect to the bottle as a whole. Likewise, the amber and brown liquid shown inside the bottle is not claimed as a feature of the mark and serves only to show the placement of the mark on the goods.

*Id.* Exhibit K, at 2, ECF No. 1-11.  Defendant Sire also represented that the bottle "was custom designed by Curtis Jackson[,]" and that "[t]he bottles are manufactured by a high-quality glass designer in Italy, Vetroelite."  *Id.* at 1–2.

The VETRO Defendants are in the business of the design and manufacture of high-end glass bottles and containers, including for liqueurs and spirits.  Compl. ¶ 65.  VETRO is a New York Corporation and a subsidiary of VSPA and/or alter ego of VSPA, and both are controlled by Mr. Daniele Feletto ("Feletto").  *Id.* ¶¶ 6–7.  Feletto is the Chief Executive Officer of VETRO (as provided on the NYS Department of State Division of Corporations Entity Information) and the Presidential and Commercial Manager of VSPA.  *Id.* ¶ 7 (citing https://www.european- business.com/portraits/vetroelite-spa/wrapping-the-world-in-glass).  VSPA is the assignee of at least 18 United States Design Patents and numerous other applications filed worldwide, including in the European Union Intellectual Property Office.

*Id.* ¶ 64.  Plaintiff alleges that Defendant VSPA avails itself of this judicial district by and through Feletto and VETRO, and that VSPA ships product into the United States for consignment, purchase, and/or resale by VETRO.  *Id.*

Plaintiff alleges that the '649 Patent and the Branson Bottle have "substantially the same clear bottle having an overall circular, toroidal (wheel-like) shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets. They are also substantially the same in that the center of their bottle's toroidal body is a recessed, flat circle, having no facets with a bottom that is flattened into an oval shape, and from the center and top of the toroidal body arises a short, cylindrical neck." *Id.* ¶ 91.  Since the introduction of the Branson Bottle, consumers have remarked on the similarities between the Rémy and Branson Bottles.  *Id.* ¶ 72.  For example, an Instagram user commented on a post by Jackson: "How you gonna use the @boscovs symbols and throw it on a fake remy-xo bottle." *Id.* (citing https://www.instagram.com/p/CAUUPO8nujd/).

Because of alleged similarities between the patented Diamant Bottle and the Branson Bottle, as well as the Rémy Bottle and Branson Bottle, Plaintiff brings claims for: (i) direct infringement of the '649 Patent under 35 U.S.C. § 271(a) against all Defendants (Count I); (ii) indirect infringement of the '649 Patent under 35 U.S.C. § 271(b) against all Defendants (Count 2); (iii) indirect infringement of the '649 Patent under 35 U.S.C. § 271(c) against all Defendants (Count III); (iv) violation of Section 32(1) of the Lanham Act against Sire (Count IV); (v) trademark dilution under Section 43(c) of the Lanham Act against Sire (Count V); (vi) violation of Section 43(a) of the Lanham Act against Sire (Count VI); (vii) contributory trademark infringement against the VETRO Defendants (Counts VII, X); (viii) declaration denying, or directing abandonment of, Sire's U.S. Trademark Application Serial No. 88/788,224

(Count VIII); (ix) common law trademark infringement and unfair competition under New York

Law against Sire (Count IX); and (x) injury to business reputation and dilution under N.Y. Gen.

Bus. Law § 360-1 against Defendant Sire (Count XI).

Defendant Sire moves to dismiss all counts for failure to state a claim for relief.

*See* Memorandum in Support of Motion to Dismiss Counts I-VI, VIII-IX, and XI of the

Complaint ("MTD Sire"), ECF No. 29.  The VETRO Defendants move to dismiss the complaint

as to Defendant VSPA for lack of personal jurisdiction, and as to both, for failure to state a claim

for relief.  *See* Memorandum in Support of Motion to Dismiss Against Vetroelite SpA and

Vetroelite Inc. ("MTD VETRO"), ECF No. 36.[4]

## DISCUSSION

I. Legal Standard

"In order to survive a motion to dismiss for lack of personal jurisdiction, a

plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d

491, 495 (2d Cir.2006).  This prima facie showing "must include an averment of facts that, if

credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.2010) (brackets omitted).

On a Rule 12(b)(2) motion, the court may look beyond the four corners of the

complaint and consider materials outside of the pleadings, including accompanying affidavits,

declarations, and other written materials. *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323

(S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).  "In

evaluating whether the requisite showing has been made," a court must "construe the pleadings

---

[4] I address the merits of each motion below; however, because personal jurisdiction over Defendant VSPA is a threshold issue that may dispose of a need to address its further arguments, I address this issue first.

and any supporting materials in the light most favorable" to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

        To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

        When considering a motion to dismiss, the Court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the pleader's favor. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12-1312, 2013 U.S. Dist. LEXIS 61710, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) and *Prince v. Madison Square Garden*, 427, F. Supp. 2d 372, 384 (S.D.N.Y. 2006). The Court is limited to a "narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Generally, [courts] do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)) (alterations in original).

II.      Analysis

    A. Personal Jurisdiction over Defendant VSPA

        Defendant VSPA argues that I lack personal jurisdiction over it for three reasons. MTD VETRO, at 9–17.  First, I lack general jurisdiction over it because VSPA is neither "at home" in New York nor an "alter ego" of VETRO.  Second, I lack specific jurisdiction under New York's Long Arm Statute.  *Id.* at 11–16.  Third, exercising jurisdiction over it would not comport with the Due Process Clause.  *Id.* at 11–17.  I hold that I may exercise specific jurisdiction over VSPA under New York's long-arm statute and consistent with the Due Process Clause.

        Federal courts must satisfy three requirements in order to exercise personal jurisdiction over an entity: (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012).

        The statutory basis for exercising personal jurisdiction comes from the statutes of the forum-state in which a federal court sits—here, N.Y. C.P.L.R. §§ 301, 302.  Under Section 301, a court may exercise general jurisdiction over a defendant on all causes of action where the defendant's ties to New York are so continuous and systematic as to render them essentially at home in the jurisdiction.  N.Y. C.P.L.R. 301 exists when the defendant has systemic and pervasive contact with a forum, such that it is "at home" in the jurisdiction.  VSPA is quite obviously not subject to general jurisdiction because, as an Italian company residing in Italy, it is not "at home" in New York, *see Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014), nor do I find it appropriate to exercise jurisdiction over VSPA under an alter ego theory because neither the

Complaint nor Plaintiff's additional evidence shows that either that the corporate form was being used fraudulently, or that the corporate form was disregarded by the entities themselves.  *United States Barite Corp. v. M.V. Haris*, 534 F. Supp. 328, 329 (S.D.N.Y. 1982).

       Under Section 302, a court may exercise long-arm jurisdiction over nondomiciliaries that transact business in New York, contract to supply goods or services in New York, or commit a tortious act within the state.  N.Y. C.P.L.R § 302(a)(1), (2).  Section 302 also authorizes jurisdiction based on tortious acts committed outside the state, if the defendant engages in a course of conduct in New York or derives substantial revenue from goods used or consumed or services rendered in New York, § 302 (a)(3)(i), or if a defendant expects, or should reasonably expect, the tortious act to have consequences in the state and derives substantial revenue from interstate or international commerce.  § 302(a)(3)(ii).  The mere likelihood that a product sold will make its way into New York, however, is not sufficient under Section 302.  *Martinez v. Am. Standard*, 91 A.D.2d 652, 653 (2d Dep't. 1982), *aff'd*, 60 N.Y. 2d 873, 458 (1983).  A defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

       The Complaint alleges that Defendant VSPA committed the alleged infringement "by and through its New York corporate subsidiary, VETRO," that VSPA is the parent company or alter ego of VETRO, and that they share common ownership and control by Feletto.  It also alleges that when Sire was prosecuting its patent application, it told the USPTO that "[t]he bottles are manufactured by a high-quality glass designer in Italy, Vetroelite."

       In support of its motion to dismiss, VSPA offers Feletto's declaration, admitting that he is the Chief Executive Officer of both Vetro Defendants, and that VETRO is wholly-

13

owned by VSPA, but denies that VSPA engages in any kind of business in New York, neither soliciting business nor shipping its products there. ECF No. 37 ¶¶ 6–7. Instead, he avers that VETRO is separate, autonomous, and financially and operationally independent from VSPA, with each serving their own markets and clients and maintaining their own internal organization structures. *Id.* ¶ 13. In addition, Feletto avers that neither of the VETRO Defendants had any agreement or communication with Sire concerning the bottles at issue in this case or any other matter. *Id.* ¶ 8. As to the manufacture of the allegedly infringing bottles, VSPA's "engagement contract" and all relevant contacts were with a French company, Cognac Embouteillage, and VSPA contracted with a company in Slovenia for manufacturing and had the bottles delivered to France. *Id.* ¶¶ 9, 11.

In response, Plaintiff offers the following exhibits as proof that VSPA engages in business in New York.

• A copy of VSPA's LinkedIn profile, stating that it has an office located at 115 W. 30th St. New York, US (ECF No. 57-1, Exhibit 1);

• The LinkedIn profiles of two employees that identify themselves as having a position with VETRO in the U.S., but being employed "Full-time" by VSPA (*Id.*, Exhibit 2);

• Compilations of VSPA's imports listings and bill of ladings, showing that VSPA has exported products to VETRO through Port 4601 which is associated with New York, and that VETRO is the consignee/importer (*Id.*, Exhibit 3);

• A press release published June 26, 2012, in which VSPA announced that it would be opening a New York office, in which Feletto states that "[t]he opening of a new company in the US was a core point of our international growth strategy and we finally made this dream come true[,]" and which also states, "[t]he New York office will help better understand the needs of customers on the United States and Canada as well as better serve overseas clientele." (*Id.*, Exhibit 4);

• Email correspondence, and a certified English translations, between Veronique Paget ("Paget"), VSPA's Sales Manager in France, Feletto, and Pascal Rebierre ("Rebierre") of Cognac Embouteillage,

• Email dated November 2018 with the subject line "Retroplanning Branson," and indicating that the retroplanning was for 60,000 clear glass decanters "Manufacturing in Italy in a very beautiful quality of glass" (*Id.*, Exhibit 5);

• Email dated March 1, 2019, in which Rebierre stated that "Mitch Green and 50c validated the bottles produced on February 19, 20 and 21," that Rebierre was awaiting further bids and models to be sent to Mitch and 50c for validation, and that the plan involved "sending the plexi [model] directly to the US in order to save time" (*Id.*, Exhibit 6);

• Email dated April 1, 2019, in which Paget stated that the plexi would "go[] tomorrow by Fedex," and email dated April 4, 2019, in which Rebierre confirmed that he "did indeed get the plexi[,]" that "it ha[d] gone to New York[,]" and that he would be "Skyp[ing] with Mitch" the following day (*Id.*, Exhibit 7).

Plaintiff's evidence supports a finding that I may exercise specific personal jurisdiction. VSPA's conduct plainly falls within Section 302(a)(3), satisfying the statutory requirement. The Complaint alleges that VSPA engaged in tortious conduct—manufacturing or causing to be manufactured, goods that infringed Plaintiff's rights under federal and state intellectual property law. The imports listings and bills of lading establish that VSPA has been exporting glass product to New York for at least the past several years, and in that time, shipped hundreds of metric tons. The emails also establish that VSPA caused a sample of the allegedly infringing product to be shipped to New York for Sire's approval. This single shipment coupled with VSPA's substantial exporting business is sufficient to satisfy Section 302(a)(3). *See Queen Bee of Beverly Hills*, 616 F.3d at 169–71 (finding personal jurisdiction over defendant that shipped one item to New York when defendant also had extensive business activity involving New York).

Exercising jurisdiction over VSPA also comports with due process and thus passes constitutional muster. Under the Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional

notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).  A federal court may only exercise specific jurisdiction over a defendant if the defendant has certain minimum contacts with the forum, such that by "some act [he] purposefully avails [himself] of the privilege of conducting activities within the forum State." *Id.* at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The contacts must be deliberate, such as "'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  Further, the plaintiff's claims "must arise out of or relate to the defendant's contact" with the forum. *Id.* (citing *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)).

        VSPA contends that its "suit-related conduct – *i.e.*, causing the bottles to be manufactured in Slovenia and then ship[ing] to Cognac Embouteillage in France – had precisely zero connection with New York." MTD, at 16.  And, that prior to this litigation, it had no awareness of Sire or contacts with Sire or anyone else in the United States. *Id.* at 13. However, Plaintiff's evidence directly refutes these contentions.  First, the emails between Cognac Embouteillage and VSPA indicate that VSPA knew who the ultimate client was—50cent, AKA Jackson—and that the client was located in New York.  The emails further reveal that VSPA knowingly caused a plexi sample to be sent to Cognac Embouteillage with the intention and understanding that Rebierre would forward it to principals at Sire.  Thus, I find that VSPA made deliberate contacts with New York, by and through its contractual relationship with Cognac Embouteillage, the purpose of which was to supply a New York company with glass bottles.  Further, when VSPA caused the allegedly infringing sample to be shipped to New York, it was foreseeable that such act could cause tortious injury there.  Therefore, VSPA reasonably should

16

have expected that it could be haled to in courts in the forum to answer for its conduct.  *Cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886–87 (2011) (finding no personal jurisdiction in New Jersey over foreign defendant that sold goods, and sought to serve the United States market, through a distributor and whose goods happened to end up in New Jersey).

Accordingly, VSPA's motion to dismiss for lack of personal jurisdiction is denied.

B. Failure to State a Claim

1. Patent Infringement Claims

Sire argues that Plaintiff fails to plead a claim for direct infringement because Plaintiff does not allege that the Branson Bottle includes the limitations of all seven figures of the '649 Patent.  MTD Sire, at 6–7.  Further, because the Complaint only includes a single front-facing view of the Diamant Bottle, Plaintiff's patent infringement claims must fail.[5]

The VETRO Defendants join Sire's arguments, and they further argue that Plaintiff fails to satisfy Rule 8(a)'s notice pleading requirement by failing to distinguish between the conduct of the respective VETRO Defendants.  MTD VETRO, at 18–19.  Also, Plaintiff fails to plausibly allege a claim for direct, indirect, or contributory infringement because the Complaint offers only conclusory allegations.  MTD VETRO, at 19–27.

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint must plead "enough factual matter" that when taken as true, "state[s] a claim to relief that is plausible on its

---

[5] Defendant Sire argues that the Complaint fails to comply with Rule 8(a) because Plaintiff does not include all seven figures claimed in the '649 Patent in the Complaint and fails to articulate whether it is claiming infringement as to some or all.  This argument is unavailing.  The purpose of Rule 8(a) is to put a defendant on notice as to the potential claims against it.  Clearly, the Complaint has done just that, as evidenced by Sire's ability not only to raise this argument but also to extensively analyze how its Branson Bottle differs from the seven figures that appear in the '649 Patent.

face." *Twombly*, 550 U.S. at 556.  Although I previously considered the parties' extrinsic

evidence in determining whether personal jurisdiction over VSPA exists, in considering the

merits of the VETRO Defendants' motion to dismiss, I am limited to the four corners of the

complaint.[6]  *Goel*, 820 F.3d at 559 (citation omitted).

　　　　　　To properly plead a claim for patent infringement under Section 271, a complaint

must (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is

allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point

to the sections of the patent law invoked.  *Phonometrics, Inc. v. Hospitality Franchise Systems,*

*Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).  In addition, in light of the 2015 amendments to the

Federal Rules of Civil Procedure, a plaintiff alleging direct infringement must also satisfy the

more demanding pleading standards under *Twombly* and *Iqbal*.  *See, e.g.*, *Holotouch, Inc. v.*

*Microsoft Corp.*, No. 17-CV-8717, 2018 WL 2290701, at *3 (S.D.N.Y. May 18, 2018).

Therefore, a plaintiff must additionally allege "enough facts" and "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

　　　　　　In *Egyptian Goddess*, the Federal Circuit held that courts analyzing claims for

design patent infringement may only apply the ordinary observer test and may not apply the

"points of novelty" test which considered the differences between the claimed design and

---

[6] In its opposition to Defendant Sire's motion to dismiss, Plaintiff attaches declarations and evidentiary material, which include emails obtained in connection with an infringement action Plaintiff brought in the Tribunal Judiciare de Paris against Defendant Sire's bottler in France.  *See, e.g.*, ECF Nos. 45, 45-1.  Plaintiff's Complaint makes no reference to this action, and therefore, cannot be construed to include the supplemental documents.  *See Patane v. Clark*, 508 F.3d 106, 111 n.2 (2d Cir. 2007) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)) (noting that material is not "extraneous" to a complaint when the "complaint includes 'documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit'").   Therefore, I may not consider this material when ruling on Defendants' motions to dismiss, unless I exercise my discretion to convert the motions to dismiss into motions for summary judgment.  *See id.*   I decline to do so because Defendants are "entitled to a hearing on [their] motion[s] to dismiss."  *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 61 (2d Cir. 1998).

accused design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).

Under the ordinary observer test, a design patent is infringed when "in the eye of an ordinary

observer, [familiar with the prior art designs and] giving such attention as a purchaser usually

gives, two designs are substantially the same, if the resemblance is such as to deceive such an

observer, inducing him to purchase one supposing it to be the other." *Id.* at 670 (quoting

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)). "Infringement is determined by

visual comparison of the pictured design and the accused article." *Hall v. Bed Bath & Beyond,

Inc.*, 705 F.3d 1357, 1363 (Fed. Cir. 2013) (citing *Gorham*, 81 U.S. at 528). For design

infringement purposes, "the ordinary observer is not an expert in the claimed designs, but one of

'ordinary acuteness' who is a 'principal purchaser[]' of the underlying articles with the claimed

designs." *Ethicon Endo-Surgery, Inc., v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015)

(quoting *Gorham*, 81 U.S. at 528). As to the relevant focus, "[i]t is the appearance of a design as

a whole which is controlling in determining infringement. There can be no infringement based

on the similarity of specific features if the overall appearance of the designs are dissimilar."

*OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Finally, the Federal

Circuit has explained that consideration of prior art is only required in cases where the claimed

and accused designs appear "substantially the same" in the first instance. *Egpytian Goddess*, 543

F.3d at 678.

        Plaintiff has met its burdens under Rule 8 and Section 271. The Complaint

identifies the patent and its ownership, shows the patented design, and describes the accused

Branson Bottle as having "substantially the same clear bottle" with "an overall circular, toroidal

(wheel-like) shape, with most of its surface area containing raised flat and angled quadrilateral

and triangular facets." Compl. ¶ 91. The Complaint adds further specificity by describing the

features inherent in its design.  It also includes frontal images of the '649 and Branson Design

Patents, as well as the Diamant and Branson Bottles, as pictured above in Figures 3, 4, 5, and 6.

Further, it states that the resemblance is so substantially similar that it would deceive the

ordinary observer, inducing him to purchase one supposing it to be the other, in accordance with

the *Gorham* criteria of infringement, providing as evidence, social media comments highlighting

the similarities between the claimed and accused designs.  Finally, it identifies Section 271 as the

federal law infringed.

       In addition, as to the respective defendants, the Complaint alleges that Sire caused

the Branson Design Patent Application to be filed and that "[b]etween December 19 and

February 2020, Sire instructed Defendants VETRO and VSPA to manufacture a cognac bottle in

accordance with the drawing shown in the Branson Design Application and one or more of these

Defendants either individually or in combination transported, distributed, advertised, marketed,

order for sale, and/or sold cognac in their own bottle under the "Branson brand name[.]"  It

alleges that, in prosecuting its trademark registration, "Defendant Sire also wrote, '[t]he bottles

are manufactured by a high-quality glass designer in Italy, Vetroelite."  Finally, it alleges that

VSPA caused the bottle to be manufactured and delivered to Cognac Embouteillage in France,

and that VSPA shipped products from Europe to VETRO for sales and distribution.

       In sum, the Complaint identifies the proper legal standard, alleges specific facts

about infringement, and as to each Defendant, and presents evidence of confusion among likely

ordinary observers.  Rule 8 requires no more to plausibly allege a design infringement claim.

*See Hall*, 705 F.3d at 1364.

       Defendants disagree.  In their motion to dismiss, they engage in a painstaking

element-by-element analysis of the Diamant and Branson Bottles and argue that the two designs

have clear and unmistakable differences, such that consideration of prior art is wholly

unnecessary.  As evidence of such differences, they point out that the front of the design in the

'649 Patent has a recessed flat octagon with numerous edges and angles, whereas the Branson

Bottle has a recessed flat circle formed by curved lines.  *See* MTD Sire, at 9.  They also point out

that the center of the back of the '649 Patent has a recessed flat octagon with numerous edges

and angles and takes up a small portion of the back of the bottle with only four rows of facets,

whereas the back of the Branson Bottle has a flat circle formed by curved lines and takes up a

large portion of the back with only one row of facets.

       Defendants' arguments are unpersuasive for two reasons.  First, they engage in an

analysis that is markedly similar to the points of novelty test that the Federal Circuit expressly

rejected in *Egyptian Goddess*.  Second, and more importantly, Defendants at best cite only

"minor differences between [the] patented design and [the] accused article's design[, which]

cannot, and shall not, prevent a finding of infringement."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598

F.2d 1294, 1303 (Fed Cir. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 542 F.3d 665, 681

(Fed. Cir. 2008)).

       After careful inspection, I cannot say that the designs are sufficiently dissimilar to

warrant dismissal as a matter of law, particularly in light of the Federal Circuit's holding that

determining infringement of a design patent is a question of fact, and thus not appropriately

resolved in a motion to dismiss.  *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277,

1287 (Fed. Cir. 2010).  This is not a case in which the claimed and accused designs are so plainly

dissimilar that it is implausible that an ordinary observer would confuse them.  Accordingly, both

motions to dismiss are denied as to the patent infringement claims (Counts I, II, III).[7]

---

[7] Defendants also challenge the sufficiency of the pleadings with respect to the Plaintiff's claims for indirect
infringement (Counts II and III).  Because I conclude here that Plaintiff plausibly alleges a claim for direct

2. Trademark Claims – Counts IV, V, VI, VIII, IX, XI against Sire; Counts VII and X against the VETRO Defendants

Plaintiff alleges a trademark in the trade dress of its unique bottle designs. Defendants argue that Plaintiff's claims for federal trade dress infringement fail because the Complaint does not allege a registered mark that was infringed and fails to plausibly allege customer confusion.  MTD Sire, at 21–32; MTD VETRO, at 18.  As to the dilution claims, Sire argues that Plaintiff fails to plausibly allege that its mark is famous, as required under federal law, or that the Branson Bottle is substantially similar to Plaintiff's mark, as required under New York Law.  MTD Sire, at 38–39.

I hold that the Complaint does not plausibly allege claims for trademark infringement, false designation of origin, common law infringement, and unfair competition because it does not specifically allege the elements comprising Plaintiff's trade dress.

All of Plaintiff's trademark-related claims are analyzed under the same framework.  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 216 n.9 (2d Cir. 2012); *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (indicating that the elements to state a claim under New York common law mirror those required to state a claim under the Lanham Act).  Courts apply a two-prong test: The first looks to whether the senior user's mark is entitled to protection; the second looks to whether the junior user's use of its mark is likely to cause consumers confusion as to the origin or sponsorship of the junior user's goods.  *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993)).  A certificate of registration with the USPTO is "prima facie evidence that the mark is

---

infringement, and any potential redundancies in the pleadings can be addressed at a later date, I do not consider the sufficiency of the allegations with respect to the remaining claims.

registered and valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Id.* (citation omitted). The likelihood-of-confusion prong turns on whether ordinary consumers "are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [the junior user's] mark." *Id.* (citation omitted)).

To state a claim for dilution under the Lanham Act, a plaintiff must allege that it is the owner of a mark that is famous, as measured by four factors defined in the Act; that the defendant is making use of the challenged designation as a mark or trade name; and that the defendant's use causes dilution by blurring, defined as association arising from the similarity between a mark and a famous mark that impairs the distinctiveness of the famous mark.[8]  The requirements to allege dilution under New York Law are principally the same, except that instead of the famousness requirement, N.Y. Gen. Bus. Law § 360-l requires only that the claimed and accused marks be "substantially similar."

As a threshold matter, however, where a plaintiff seeks to protect registered trade dress, the trade dress must be carefully defined.  *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (5th ed.).  While a plaintiff may claim a combination of elements making up its alleged trade dress, it is not adequate to solely refer to such a combination as "the trade dress."  Rather, the discrete elements which make up that combination must be separated out and clearly identified in a list.  *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) (explaining that without "a precise explanation of

---

[8] Section 43(c) identifies the following relevant factors a court may consider: the degree of similarity between the mark or trade name and the famous mark; the degree of inherent or acquired distinctiveness of the famous mark; the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; the degree of recognition of the famous mark; whether the user of the mark or trade name intended to create an association with the famous mark; and any actual association between the mark or trade name and the famous mark.  15 U.S.C. § 1125(c)(2)(B).

the character and scope of the claimed trade dress, litigation will be difficult . . . "); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116–117 (2d Cir. 2001) ("[A] plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress[.]"); *National Lighting Co., Inc. v. Bridge Metal Industries, LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009) ("A conclusory reliance on the 'entire look of the product' does not fulfill the plaintiff's obligation to offer 'a precise expression of the character and scope of the claimed trade dress.'"). A plaintiff cannot simply submit an image and expect the court to determine what part or parts constitute protectable trade dress. *National Lighting Co.*, 601 F. Supp. 2d at 562. Nor can a plaintiff point to the "overall look; it must 'articulat[e] . . . the specific elements which comprise its distinct dress." *Landscape Forms, Inc.*, 113 F.3d at 381. Defining the elements is especially critical when plaintiff alleges that its product trade dress is embodied in multiple products. *See, e.g.*, *Yurman Design, Inc.*, 262 F.3d at 116–17. Such is the case here where Plaintiff claims protectable trade dress in both its Rémy and Diamant Bottles.

It is beyond dispute that Plaintiff has registered marks, which are presumptively entitled to protection; however, the Complaint does not specifically allege the elements comprising its trade dress. Rather than providing a list of clearly and separately identified elements, the Complaint relies on a series of images, the registered marks, and a general description of the overall look—a toroidal, faceted, and central-recessed design, as contained in both the '649 Patent, the Diamant Bottle, and the Rémy Bottle. Compl. ¶¶ 2, 18, 50, 79, 80, 81; *see also id.* ¶ 61 (alleging infringement of "RÉMY's iconic toroidal-shaped cognac bottle and brand"). This is insufficient because absent sufficient particularity, a competitor would not know what new designs would be subject to challenge. *See Yurman Design, Inc.*, 262 F.3d at 116–17. Plaintiff's claims fail at the threshold because the Complaint does not "articulate the precise

nature of the trade dress [P]laintiff purports to claim." *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548 (S.D.N.Y. 2017).

Accordingly, Sire's motion to dismiss the claims for trademark infringement and false designation of origin under the Lanham Act, and common law infringement and unfair competition under New York law, (Counts IV, VI, VIII, IX) is granted with leave to amend. For the same reason, Sire's motion to dismiss the claims for dilution under the Lanham Act and New York law is granted (Counts V and XI), with leave to amend. Further, because it is axiomatic that contributory infringement is predicated on the existence of direct infringement, *see Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010), the VETRO Defendants' motion to dismiss the claims for contributory infringement (Counts VII, X) also is granted with leave to amend.

## CONCLUSION

For the reasons provided above, Defendants' motions are granted in part and denied in part as follows. VSPA's motion to dismiss for lack of personal jurisdiction is denied. The motions to dismiss the Counts I–III are denied in full. The motions to dismiss Counts IV, V, VI, VII, VIII, IX, X, and XI are granted in full, with leave to amend. The argument currently scheduled for February 7, 2022 is canceled. The Clerk of the Court shall terminate ECF Nos. 28, 35.

SO ORDERED.

Dated:      January 10, 2022                          ____/s/ Alvin K. Hellerstein___
            New York, New York                        ALVIN K. HELLERSTEIN
                                                      United States District Judge