## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

E. RÉMY MARTIN & CO.,

                Plaintiff,

        vs.

SIRE SPIRITS LLC, VETROELITE INC., and
VETROELITE S.P.A.,

                Defendants.

1:21 CV 06838-AKH

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff E. RÉMY MARTIN & CO. ("Plaintiff" or "Rémy") files this First Amended Complaint against Defendants SIRE SPIRITS LLC ("Sire"), VETROELITE INC. ("VETRO"), and VETROELITE S.P.A. ("VSPA") (collectively "Defendants"), alleging as follows:

## NATURE OF THIS ACTION

1.      Plaintiff brings this action as a result of Defendants' willful infringement of United States Design Patent No. D638,649 (hereinafter the "D649 Patent"), attached as **Exhibit A**, in violation of the United States Patent Act.

2.      Plaintiff also brings this action to enforce its rights in the trade dress of its famous extra old ("XO") cognac bottle (the "RÉMY BOTTLE Trade Dress") under Section 31(1) of the Lanham Act, 15 U.S.C. § 1114(1), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims under the statutory and common laws of the State of New York, all arising from Defendants'

unauthorized use of Plaintiff's RÉMY BOTTLE Trade Dress.  Plaintiff's RÉMY BOTTLE Trade Dress comprises

      a.   a toroidal shape;

      b.   a flat, recessed center;

      c.   ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges; which

      d.   creates a scalloped appearance when the bottle is viewed from the front or back.

3.     The RÉMY BOTTLE Trade Dress has come to be associated exclusively with Plaintiff.  Through over three decades of use, millions of dollars in promotional expenditure and sales, unsolicited media attention and widely distributed photographs of multiple celebrities with its bottle, Plaintiff's RÉMY BOTTLE Trade Dress has acquired not only distinctiveness, but also fame.

4.     This action centers upon Defendants' blatant infringement and copying of Plaintiff's patented bottle design and distinctive trade dress, as shown below:



| Patented DIAMANT Bottle Design | RÉMY BOTTLE Trade Dress | Infringing Product |

5.      Defendants have willfully and blatantly designed their bottle to unfairly capitalize on the goodwill and reputation that Plaintiff's bottle has achieved and to unabashedly profit from its bad faith infringement.  Accordingly, Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

6.      Plaintiff is a Société par actions simplifée organized under the laws of France, with an address of 20 rue de la Société, Vinicole, F-16100, Cognac, France.

7.      Upon information and belief, Defendant Sire Spirits, LLC, is a Delaware limited liability company with an established place of business at 399 Park Avenue, Suite 3600, New York, NY 10022.

8.      Defendant VETRO is a New York Corporation with an established place of business at 115 W 30th St., RM 402, New York, NY 10001.

9.      Defendant VSPA is an Italian company with a place of business at Via I$^0$ Maggio, 4, 31024 Ormelle (Treviso) Italy.  Upon information and belief, Defendant VETRO is a United States subsidiary of Defendant VSPA and/or an alter ego of Defendant VSPA.  Both VETRO and VSPA are controlled by Mr. Daniele Feletto.  Mr. Feletto is the CEO of VETRO (as provided on the NYS Department of State Division of Corporations Entity Information) and he is also the Presidential and Commercial Manager of VSPA. *See* https://www.european-business.com/portraits/vetroelite-spa/wrapping-the-world-in-glass.  Mr. Feletto's address listed on the NYS Department of State Division of Corporations is the same address as VETRO.  Therefore, VSPA avails itself of this Judicial District by and through Mr. Felletto and VETRO as its commonly owned and controlled United States subsidiary.  On information and belief, VSPA ships product into the United States for consignment, purchase, and/or resale by VETRO.

## JURISDICTION AND VENUE

10.     This is an action in which Plaintiff seeks injunctive relief and damages arising from the Defendants' infringement of the Patent Act, 35 U.S.C. § 100 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and common law.  Defendants' illegal acts have irreparably harmed the goodwill and reputation of Plaintiff and have caused Plaintiff significant damage.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), as this action involves federal questions regarding the Defendants' violations of federal law, including the Patent Act and the Lanham Act.

12.     This Court has both general and specific jurisdiction over Sire, VETRO, and VSPA because each of Sire, VETRO, and VSPA has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over each of the named Defendants would not offend traditional notions of fair play and substantial justice.

13.     Defendant Sire has committed and continues to commit acts of patent infringement and trademark infringement in this District, by, among other things, manufacturing, using, offering for sale, and selling infringing XO cognac bottles that copy patented and registered trade dress features of Plaintiff's proprietary cognac bottles and trade on Plaintiff's goodwill and fame.

14.     Defendant VSPA has committed and continues to commit acts of patent infringement and contributory trademark infringement in this District by and through its New York corporate subsidiary, VETRO, by, upon information and belief, among other things, manufacturing, using, offering for sale, and selling infringing XO cognac bottles that copy

patented and trade dress features of Plaintiff's proprietary cognac bottles and trade on Plaintiff's goodwill and fame. VSPA and/or VETRO engage in such infringing conduct through or in conjunction with Defendant Sire in this judicial district.

15.    Venue is proper as to the Lanham Act and common law claims in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

16.    Venue is proper as to the Patent Act claim in this district pursuant to 28 U.S.C. § 1400(b) because Defendant Sire maintains a regular and established place of business in this district and committed acts of infringement in this District.

17.    Venue is proper as to the Patent Act claim in this district pursuant to 28 U.S.C. § 1400(b) because Defendant VETRO maintains a regular and established place of business in this district and committed acts of infringement in this District.

18.    Venue is proper as to the Patent Act claim in this district pursuant to 28 U.S.C. § 1391(c)(3) because Defendant VSPA is located in Italy.  *In re HTC Corp.*, 889 F.3d 1349, 1360 (Fed. Cir. 2018) ("a defendant not resident in the United States may be sued in any judicial district").  Furthermore, the controlling force behind Defendant VSPA, Mr. Feletto, has stated on the NYS Department of State Division of Corporations Entity Information that he can be found at 115 W 30th St., RM 402, New York, NY 10001 USA, which is located in this Judicial District.

## FACTUAL BACKGROUND

### The Famous Rémy XO Cognac and RÉMY BOTTLE Trade Dress

19.     The Plaintiff's XO cognac is one of the most famous, prestigious, and prominent of the cognac brands produced in Cognac, France.  In 1981, Cellar Master André Giraud set out to create an XO cognac (one aged at least ten years) that would be among the very best Cognac Fine Champagne.  RÉMY MARTIN XO COGNAC was the result, coming exclusively from the highest-quality vineyards of Cognac, the Grande Champagne, and Petite Champagne.  Such origins offer exceptional aging potential and put the product in the class of Cognac Fine Champagne.

20.     From the inception of its sales in 1985, Plaintiff's XO cognac has been sold in distinctive product packaging.  See **Exhibit B.**  This distinctive product packaging is hereinafter identified, and fully described below in the list set forth in subparagraphs 20(a), (b) and (c), as the "RÉMY BOTTLE Trade Dress."  Like its predecessor bottles, the current RÉMY BOTTLE Trade Dress features this distinctive product packaging, comprising

a.   a toroidal shape;

b.   a flat, recessed center;

c.   ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges; which

d.   creates a scalloped appearance when the bottle is viewed from the front or back.

21.     The current bottle bearing RÉMY BOTTLE Trade Dress, which has been sold since 2017, is shown on the next page:



22.    Since Plaintiff commenced sales of Plaintiff's XO cognac in the RÉMY BOTTLE Trade Dress, Plaintiff has vigorously protected the famous RÉMY BOTTLE Trade Dress.

23.    Specifically, Plaintiff is the owner of multiple U.S. trademark registrations for the RÉMY BOTTLE Trade Dress.

24.    Plaintiff's oldest registration for the REMY BOTTLE Trade Dress is the valid, incontestable trademark registration, U.S. Registration No. 1,385,396, which issued on March 4, 1986. A true and correct copy of the registration certificate for U.S. Registration No. 1,385,396 is attached hereto as **Exhibit C**.

25.    Plaintiff is also the owner of valid, incontestable U.S. Registration Nos. 2,068,531, 3,436,246, and 5,337,465, for the RÉMY BOTTLE Trade Dress.  True and correct copies of the registration certificates for the foregoing trademark registrations are attached hereto as **Exhibits D, E,** and **F**, respectively.

26.    The trademark registrations for the RÉMY BOTTLE Trade Dress set forth above are in full force and effect.

### The Market Dominance of the RÉMY BOTTLE Trade Dress

27.    Plaintiff promotes its famous RÉMY BOTTLE Trade Dress prominently in connection with the sales of its XO cognac.

28.     Plaintiff's RÉMY BOTTLE Trade Dress has achieved recognition nationally as a result of the dominant position of Plaintiff's XO cognac in the marketplace.  Specifically, Plaintiff's XO cognac sold in the RÉMY BOTTLE Trade Dress occupies second place in market share in the XO cognac market, with one quarter of the total sales in the US market.

29.     For the past five years alone, Plaintiff's XO cognac sold in the RÉMY BOTTLE Trade Dress has resulted in sales of nearly 73 million dollars.

30.     Plaintiff's closest competitor in the XO cognac market is Hennessy XO, which has its own distinctive bottle shape.

31.     Plaintiff's XO cognac sold in the RÉMY BOTTLE Trade Dress is  packaged in an outer protective box for shipment, but retail stores usually display the RÉMY BOTTLE Trade Dress outside of its protective box, and Plaintiff's XO cognac is also regularly sold in bars, restaurants, clubs, and lounges where the RÉMY BOTTLE Trade Dress is prominently displayed both behind the bar and at the time of service.  Retail stores and other sellers display the RÉMY BOTTLE to allow purchasers to recognize and find the world-famous Rémy XO Cognac by seeing and recognizing the world-famous RÉMY BOTTLE Trade Dress.[1]

32.     Due to their commonplace display at retail outlets, bars, restaurants, clubs, and lounges, in the relevant market, trade dress in bottle shapes is used to distinguish products from each other and to cultivate consumer recognition and identification of the bottle shape with a particular producer.   According to a report by the National Alcohol Beverage Control Association, the total category volume breakdown of the XO cognac market in the United States is as follows:

---

[1] Sire's XO cognac is also sold in a cardboard box for retail sale, but the bottle is displayed at locations where it is sold as well as on premise locations like clubs, lounges, bars, and restaurants.

| XO Cognac Brands | Market Share |
|---|---|
| Hennessy XO: | 65% |
| Rémy Martin XO: | 25% |
| Courvoisier XO: | 6% |
| Martell XO: | 2% |
| Other: | 2% |

33.     According to an Annual Brands Report by Drinks International, Plaintiff's XO cognac sold in the RÉMY BOTTLE Trade Dress is currently the second best-selling cognac worldwide, and the top-trending cognac worldwide. The cover, table of contents, and relevant page of the Annual Brands Report is appended hereto as **Exhibit G**.

34.     As a result of the long and continued use of the RÉMY BOTTLE Trade Dress, and as evidenced by its dominant market position, Plaintiff is one of the premier manufacturers of XO cognac, and the RÉMY BOTTLE Trade Dress has come to represent high quality, integrity, authenticity, and goodwill not only in the United States but around the world and is associated exclusively with Plaintiff.

## The Fame of the RÉMY BOTTLE Trade Dress

35.     The RÉMY BOTTLE Trade Dress is famous in the United States, and indeed, throughout the world, as a result of the extensive advertising, promotion, and sales over the past thirty-five years.

36.     Plaintiff has advertised its XO cognac in the RÉMY BOTTLE Trade Dress through, among other things, outdoor signage, including billboards and digital displays, promotions and advertising on television, streaming platforms and in print; digital marketing on numerous channels, including search and social media platforms; and its own website (www.remymartin.com); and social media channels.  Examples of these advertisements are appended hereto as **Exhibit H.**

37.     Plaintiff prominently features the RÉMY BOTTLE Trade Dress on its Facebook page (@RémyMartinUSA) where it has over 2.6 million followers.

38.     In the past five years alone, Plaintiff has spent over 15 million dollars promoting the XO cognac sold in the RÉMY BOTTLE Trade Dress.

39.     Such promotion has resulted in nearly 900 million impressions (the number of times a consumer encounters the advertisement that appears in print, on billboard or digital displays, or on a consumer's television, computer, tablet, phone, or other device).

40.     As further evidence of Plaintiff's fame and superior brand recognition as a result of the RÉMY BOTTLE Trade Dress, Plaintiff regularly receives unsolicited editorial coverage in various media sources across the United States.  Examples of such coverage are appended hereto as **Exhibit I.**

41.     The volume and frequency of the appearance of the RÉMY BOTTLE Trade Dress in a wide array of media publications demonstrate the worldwide recognition of the iconic RÉMY BOTTLE Trade Dress.  **Exhibits H** and **I** include press clippings showing the variety of publications and media channels featuring the RÉMY BOTTLE Trade Dress, including *Esquire, Forbes, Town and Country, The Wall Street Journal, The New York Times*, and *CNBC.com*.

42.     The XO cognac sold in the RÉMY BOTTLE Trade Dress has received a number of awards.  It won a Gold Medal at the 2010 Spirits Business Cognac Masters and Gold Medals in 2014 and 2020 at the San Francisco World Spirit Competition.  In 2010, 2011, 2015, and 2017, the XO cognac sold in the RÉMY BOTTLE Trade Dress won Silver Awards at the International Wine & Spirit Competition.  In the past five years it has garnered five silver medals and one gold medal at the International Wine & Spirits Contest.  In 2020, the XO cognac sold in the RÉMY BOTTLE Trade Dress received a gold medal at the San Francisco World Spirit

Competition, a silver medal at the International Wine & Spirit Competition, and a silver medal at the International Spirit Challenge.

43.    Plaintiff has formed partnerships with many brands and celebrities, including Jermaine Dupri, who, in 2018, was inducted into the Songwriters Hall of Fame and who has co-written multiple number one rap and pop singles and produced multiple platinum albums; Danielle Chang, an author, cooking show host, and promoter of Asian American food and culture; Boi-1da, a prolific and award-winning songwriter and record producer who has collaborated with Drake, Rihanna, and Nicki Minaj; and Jackie Cruz, an actress, singer, and model who starred in the top television series *Orange is the New Black*.  These high-profile relationships have brought additional attention to, and contributed to the fame of, the RÉMY BOTTLE Trade Dress.

44.    Celebrities have been featured with the RÉMY BOTTLE Trade Dress in unsolicited media.  For example, the internationally renowned model Bella Hadid and her boyfriend, the Grammy Award winning musical artist The Weeknd, have been captured together by paparazzi with the RÉMY BOTTLE Trade Dress.  Other celebrities who have garnered national attention and fame for the RÉMY BOTTLE Trade Dress include four-time NBA Champion and one of the greatest basketball players of all time Lebron James; two-time NBA Champion Chris Bosch; Grammy Award winning and Primetime Emmy Award winning stand-up comedian, actor, and producer Kevin Hart; race car driver Lewis Hamilton, who also raps under the pseudonym XNDA; actress Bai Ling, known for her work on film and television, including the top television series *Entourage* and *Lost*; and rapper and producer Boi-1da, who has produced albums for Drake, Rihanna, Eminem, Jay-Z, and Nicki Minaj, among others.

Unsolicited photographs of these celebrities with the RÉMY BOTTLE Trade Dress are appended hereto as **Exhibit J.**

45.     The RÉMY BOTTLE Trade Dress has also been featured in the music video for the song *Solita* performed by musical artists Ozuna, Bad Bunny Wisin, and Almighty.  This music video has received over 565 million views on YouTube since it was posted in January 2018.  A screenshot of the music video prominently featuring the RÉMY BOTTLE Trade Dress is shown below:



*See* https://www.youtube.com/watch?v=j-sz8M8gc6U.

46.     Further evidencing the fame of the brand and, by association, its distinctive bottle-shaped product packaging, Plaintiff's XO product is also featured in the lyrics of the song *Cognac* released in 2018 by blues legend Buddy Guy and featuring Keith Richards and Jeff Beck.

> "Come on Keith, help yourself
> Rémy Martin XO
> I'm only playin' what I know
> Come on in here, Beck
> Stretch you neck and drink this XO with me

Let me tell you 'bout this woman: when she'd get tight

Give a double shot of Rémy Martin XO

Bet you'll watch it rocket rise

Talkin' 'bout Cognac

XO Cognac that is

And it goes right to your head

Yes it do

How well do I know"

47.     As a result of Plaintiff's expenditure of millions of dollars to promote its XO cognac in the RÉMY BOTTLE Trade Dress and the success it has enjoyed as evidenced by the millions of dollars in sales of the product in the United States, the RÉMY BOTTLE Trade Dress is distinctive, has become well known and, indeed, famous, to the trade and members of the purchasing public, and has established substantial goodwill such that the public associates and identifies the XO cognac sold in the RÉMY BOTTLE Trade Dress with a single source of origin.

## The Revolutionary Rémy Diamant Design

48.     On July 23, 2010, Sébastien Servaire invented a one-of-a-kind bottle design for Centaure de Diamant (the "DIAMANT BOTTLE") cognac.  Plaintiff filed for patent protection via the European Union Intellectual Property Office and registered this design as EM 001735457-0001 (the "EU Design").

49.     According to Plaintiff, the Centaure de Diamant was created by Cellar Master Pierrette Trichet to contain the most elegant eaux-de-vie from Rémy Martin's precious reserves, making it "the jewel of the Fine Champagne."  Servaire's bottle served as the unique container for this unique cognac.  The USPTO agreed that the DIAMANT BOTTLE was unique and issued U.S. Design Patent No. 638,649 to Plaintiff on May 31, 2011 (the "D649 Patent"):



50.     The DIAMANT BOTTLE is notable for its circular array of raised flat and angled quadrilateral and triangular facets arranged about a toroidal (wheel-like) body, which converge towards one another to meet at a recessed, flat, centrally located circular surface.  The neck of the DIAMANT BOTTLE is a short cylinder that extends from the top of the toroidal body, while a flat ovular bottom is located below that toroidal body.

51.     The DIAMANT BOTTLE was offered for sale in the United States in and around 2013, and can be purchased through online distributors such as, for example, OnShoreCellars.com (https://onshorecellars.com/products/remy-martin-centaure-de-diamant, last visited January 11, 2022), Dream Works Duty Free (https://www.dreamworksdutyfree.com/product/remy-martin-centaure-de-diamant-70cl/, last visited August 10, 2021), and Wine Style (https://winestyleonline.com/products/Remy-Martin-Centaure-de-Diamant-gift-box.html, last visited January 11, 2022).

52.     The DIAMANT BOTTLE is associated with extremely high-quality cognac products and has garnered Plaintiff numerous awards, including a Tasting Gold Award, Best in Class at the 2011 International Wine and Spirit Competition, as well as a gold medal at the 2013 International Wine and Spirit Competition.

### Defendants' Wrongful Conduct:  Patent Infringement

53.     On December 17, 2019, Curtis J. Jackson III ("Jackson") filed a design patent application entitled "Beverage Bottle," an illustration of which is provided below:



See **Exhibit K** at 3 (copy of U.S. Design Patent Application No. 29/717,437 to Curtis J. Jackson III) (the "Branson Design Application").

54.     Upon information and belief, Jackson is a principal of Defendant Sire.

55.     Jackson asserted in the Branson Design Application that he "invented" the above design and that it was "new" and "original."  *Id.* at 1.

56.     Between December 2019 and February 2020, Defendant Sire instructed Defendants VETRO and VSPA to manufacture a cognac bottle in accordance with the drawing shown in the Branson Design Application, and one or more of these Defendants either individually or in combination transported, distributed, advertised, marketed, offered for sale, and/or sold cognac in their own bottle under the "Branson" brand name, as shown below:



The above-pictured product, as well as any reference to "Branson" as a brand or bottle design, is hereafter referred to as the "INFRINGING BRANSON BOTTLE."

57.     On or about February 6, 2020, Defendant Sire applied to the U.S. Trademark Office to register a trademark covering the product design of the INFRINGING BRANSON BOTTLE.

58.     The U.S. trademark application for the design of the INFRINGING BRANSON BOTTLE was assigned Serial Number 88/788,224 (the "Sire Trademark Application").

59.     During prosecution of the Sire Trademark Application, Defendant Sire agreed that the following language properly described the INFRINGING BRANSON BOTTLE:

The mark consists of a three-dimensional product packaging design comprised of a clear bottle that has an ***overall circular, wheel-like shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets.*** However, ***the center of this wheel-like shape is a recessed, flat circle, having no facets*** and containing within it a gold circle that, in turn, contains a gold, stylized letter "B". Also, ***the bottom of the clear bottle design is flattened into an oval shape, and from the center and top of the clear bottle design arises a short, cylindrical neck***. The matter shown in dotted lines is not claimed as a

feature of the mark, but serves only to show the position of the mark with respect to the bottle as a whole. Likewise, the amber and brown liquid shown inside the bottle is not claimed as a feature of the mark and serves only to show the placement of the mark on the goods.

**Exhibit L** at 2 (Sept. 8, 2020 Response to Office Action on behalf of Defendant Sire) (emphasis added).

60. In that same September 8, 2020 Response to Office Action, Defendant Sire represented that the INFRINGING BRANSON BOTTLE "was custom designed by Curtis Jackson." *Id.* at 1-2. Defendant Sire also wrote, "[t]he bottles are manufactured by a high-quality glass designer in Italy, Vetroelite." *Id.* at 2.

61. On information and belief, Defendant Sire made the aforementioned representations with knowledge or with willful blindness of RÉMY's iconic toroidal-shaped cognac bottle and brand.

62. On information and belief, Defendant Sire made the aforementioned representations with knowledge or with willful blindness of the D649 Patent.

67. On information and belief, Defendant Sire made the aforementioned representations with knowledge or with willful blindness of the trademark registrations covering the RÉMY BOTTLE Trade Dress.

63. Defendant VSPA is the assignee of at least 18 United States Design Patents and numerous other applications filed worldwide, including in the European Union Intellectual Property Office. On information and belief, Defendants VSPA and VETRO knew or deliberately disregarded the risk that the INFRINGING BRANSON BOTTLE was a copy of the DIAMANT BOTTLE, which was patent protected in the United States with the D649 Patent and

was also a registered EU Design, which through reasonable diligence would have informed Defendants VSPA and VETRO of the D649 Patent.

64.     Defendants VETRO and VSPA are in the business of the design and manufacture of high-end glass bottles and containers, including for liqueurs and spirits.  Based on the nature of their business and the worldwide renown and unique fame of the RÉMY BOTTLE, Defendants VETRO and VSPA knew or had reason to know of the protectable and registered RÉMY BOTTLE Trade Dress.

65.     On information and belief, Defendants VETRO and VSPA manufactured, used, and/or transported the INFRINGING BRANSON BOTTLE into the United States with knowledge or with willful blindness of the D649 Patent.

66.     On information and belief, Defendants VETRO and VSPA knew or had reason to know that the INFRINGING BRANSON BOTTLE directly infringed on the RÉMY BOTTLE and, by manufacturing, selling, and/or transporting the INFRINGING BRANSON BOTTLE into the United States, intentionally induced third-party sellers and/or distributors to perpetuate the infringing conduct by placing an instrument of consumer deception in the hands of U.S.

67.     On information and belief, despite having knowledge or constructive knowledge of Defendant Sire's infringing use and sale of the INFRINGING BRANSON BOTTLE, Defendants VETRO and VSPA continued to provide manufacturing services to Defendant Sire for the production of the INFRINGING BRANSON BOTTLE and continued to supply the INFRINGING BRANSON BOTTLE to third-party sellers and/or distributors in the U.S.

68.     On information and belief, Defendants VETRO and VSPA have taken no action to discourage Defendant Sire or third-party distributors and sellers from offering for sale, advertising, promoting, distributing, or selling the INFRINGING BRANSON BOTTLE.

69.    Since at least the beginning of 2020, one or more of the Defendants have transported, distributed, advertised, marketed, offered for sale, and/or sold products infringing on the D649 Patent.

70.    On information and belief, Defendants' INFRINGING BRANSON BOTTLE was offered based on Defendants' recognition of the limited offering of the DIAMANT BOTTLE in the United States.  Exploiting a consumer base cultivated by Plaintiff, Defendants used this opportunity to infiltrate Plaintiff's marketspace with their own cheaper version of the DIAMANT BOTTLE.

71.    On information and belief, Defendants disregarded Plaintiff's rights in the D649 Patent and forged ahead with the marketing, sale, and distribution of the INFRINGING BRANSON BOTTLE.

72.    The D649 Patent, the Branson Design Application, and the INFRINGING BRANSON BOTTLE are so substantially similar that they are nearly indistinguishable, as shown below in a side-by-side comparison:

D649 Patent            INFRINGING BRANSON BOTTLE         Branson Design Application

  

73.     Defendants even describe the INFRINGING BRANSON BOTTLE with language that  captures the claim of the D649 Patent, namely, calling it a bottle with an "overall circular, wheel-like shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets[,]…the center of this wheel-like shape is a recessed, flat circle, having no facets and … the bottom of the clear bottle design is flattened into an oval shape, and from the center and top of the clear bottle design arises a short, cylindrical neck." See **Exhibit L** at 2.

74.     Defendants' INFRINGING BRANSON BOTTLE is a near exact reproduction of the DIAMANT BOTTLE and the D649 Patent.

75.     Defendants knew or should have known that Plaintiff, not Jackson, innovated the toroidal, faceted design of the DIAMANT BOTTLE that Defendants have converted into the INFRINGING BRANSON BOTTLE and is the subject of the Branson Design Application.

76.     Upon information and belief, no other party is offering cognac in the United States in a bottle having a toroidal body and recessed center like that of the DIAMANT BOTTLE, D649 Patent, other than Defendants.

77.     Plaintiff has not granted a license or any other authorization to Defendants to make use, offer for sale, sell, or import bottles that embody the toroidal, faceted, and central-recessed design patented in the D649 patent and which is proprietary to Plaintiff, particularly in relation to the and DIAMANT BOTTLE.

78.     Plaintiff has been damaged by the foregoing infringing and wrongful acts of Defendants, including, without limitation, suffering actual damages.

79.     Defendants' unlawful manufacturing and selling of the INFRINGING BRANSON BOTTLE was not discovered by Plaintiff until summer of 2020, less than one year from the filing of this complaint.

80.     Defendants' wrongful conduct and infringing activities will continue unless enjoined by this Court.

### **Defendants' Wrongful Conduct:  Trade Dress Infringement and Dilution**

81.     Sire sells at least three different Branson-branded cognacs using bottle shapes other than the INFRINGING BRANSON BOTTLE, which is the only Sire product at issue in this action.[2] Sire is capable of making and selling cognac in bottles that do not infringe the rights of others, but chose instead to copy the RÉMY BOTTLE Trade Dress when creating the INFRINGING BRANSON BOTTLE.

82.     Before Sire embarked on marketing its copycat INFRINGING BRANSON BOTTLE, its principal, Curtis Jackson III, posted an image to Instagram of himself with these non-infringing Branson-branded bottles and the iconic Louis XIII Bottle.  The image below shows this clear attempt by Mr. Jackson to associate Sire's Branson brand with the worldwide fame and renown of Plaintiff's Rémy brand for his own marketing purposes.



---

[2] The bottles of the following Branson cognac varieties sold by Sire are not involved in this action: (i) the Phantom, aged for two to three years; (ii) Royal, described as a one-of-a-kind blend; and (iii) Branson VSOP, a Grande Champagne.

83.     Defendants Sire, VETRO, and VSPA were at all relevant times aware that the INFRINGING BRANSON BOTTLE violated Plaintiff's rights in the RÉMY BOTTLE Trade Dress.  Indeed, Defendant Sire instructed Defendants VETRO and VSPA via email to copy a Rémy design. The instructions and attached blueprints Sire's Mitchell Green sent to the bottler of the cognac for the INFRINGING BRANSON BOTTLE prompted Pierre-Alain Guillemet of the bottler, Cognac Embouteillage, to reply, **"You know this bottle already exists?" attaching a link which, upon information and belief, contained a photo of trade dress-protected product packaging made and sold by Rémy.** Copies of the relevant emails between Messrs. Green and Guillemet, seized pursuant to an Order issued by the Tribunal Judiciaire de Paris against Cognac Embouteillage, Sire's bottler and packager in Cognac, France, on January 27, 2021, are attached hereto together with their certified translations to the Declaration of Annette Sion as **Exhibit M** at pp. 19 and 71. Ms. Sion sets forth the circumstances surrounding the filing of the proceeding in the Tribunal and the circumstances under which these emails were acquired. *Id.* at p. 1-3.

84.     Not content merely to copy Plaintiff's revered design, Sire also appropriated Plaintiff's origin story of its world-renowned Louis XIII Bottle. The Louis XIII Bottle was created in 1874, when Paul-Émile Rémy Martin acquired a historic flask, thought to date back to 1569, discovered on a battlefield in France. *See* https://www.louisxiii-cognac.com/en-us/master-of-time/a-unique-making-process/the-decanter.html appended as **Exhibit N** hereto. Sire claims that the INFRINGING BRANSON BOTTLE was inspired by canteens used by soldiers during the Civil War. Doc. 29 at p. 3.

85.     Moreover, upon information and belief, no party is offering cognac in the United States in a bottle bearing the RÉMY BOTTLE Trade Dress, other than Defendants.

86.     Defendants are not licensed by Plaintiff and are not authorized by Plaintiff to use the RÉMY BOTTLE Trade Dress for any of Defendants' goods.

87.     Defendants' use of the INFRINGING BRANSON BOTTLE commenced long after Plaintiff's use and extensive worldwide advertising of the RÉMY BOTTLE Trade Dress and well after the RÉMY BOTTLE Trade Dress achieved fame in the marketplace.

88.     Despite Defendants' wrongful conduct, prior to bringing this action, in an effort to promote settlement, Plaintiff initiated an opposition against Sire's trademark application for the INFRINGING BRANSON DESIGN in the U.S. Trademark Office, Trademark Trial and Appeal Board ("TTAB").  Separately, Plaintiff initiated the action described in Exhibit M at pp. 1-3 against Sire's bottler in France.  During the discovery conference in the TTAB proceeding, Plaintiff's counsel raised with Sire's counsel the possibility of an amicable resolution.

89.     Plaintiff brought this action when it became clear that Defendants' infringement would not be resolved in any other way.  After bringing this action, Plaintiff moved to suspend the TTAB proceeding pending the resolution of this action.  In response, Sire took the practically unprecedented act of opposing that stay, notwithstanding that this Court—and not the TTAB— has final authority to determine the questions of infringement and dilution, and therefore registrability of the INFRINGING BRANSON BOTTLE. The stay of the TTAB proceeding was granted despite Sire's bad-faith opposition.

**Defendant's Wrongful Conduct Has
Caused, and is Likely to Continue to Cause,
Consumer Confusion and Dilution of Plaintiff's Famous Trade Dress**

90.     In a blatant attempt to trade off the hard-earned goodwill and reputation of the Trade Dress of the RÉMY BOTTLE Trade Dress, Defendants' INFRINGING BRANSON BOTTLE is being used to create a likelihood of consumer confusion, and indeed, has already

caused actual consumer confusion.  Such confusion is not merely likely, but inevitable, as is apparent when comparing the INFRINGING BRANSON BOTTLE to the iconic RÉMY BOTTLE Trade Dress, as shown below, with the RÉMY BOTTLE Trade Dress shown on the left and the INFRINGING BRANSON BOTTLE shown on the right:



91.     The INFRINGING BRANSON BOTTLE blatantly copies numerous elements of the RÉMY BOTTLE Trade Dress.  Like the RÉMY BOTTLE Trade Dress, the INFRINGING BRANSON BOTTLE has:

  a.   a toroidal shape,

  b.   a flat, recessed center,

  c.   ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

  d.   creates a scalloped appearance when the bottle is viewed from the front or back.

Inconsequential differences between the parties' bottles, such as the INFRINGING BRANSON BOTTLE's raised flat and angled quadrilateral and triangular facets, do not detract from the near-identical scalloping effect created by the ridges of the respective bottles.

92.     Consumers have remarked on these similarities on social media, further demonstrating the harm to Plaintiff.  For example, Instagram users have acknowledged the close resemblance of the INFRINGING BRANSON BOTTLE to the RÉMY BOTTLE Trade Dress, demonstrating how Defendants' wrongful actions could cause confusion as to the source of

cognac sold in the INFRINGING BRANSON BOTTLE and have diluted the exclusive association of the RÉMY BOTTLE Trade Dress with Plaintiff.  One such user wrote the following in response to an Instagram post by Jackson: "How you gonna use the @boscovs symbols and throw it on a **fake remy-xo bottle.**" (emphasis added).



*See* https://www.instagram.com/p/CAUUPO8nujd/ (emphasis added).

93.    Moreover, since the institution of this action, hundreds of social media commentators have remarked on the striking similarity of the INFRINGING BRANSON BOTTLE and RÉMY BOTTLE Trade Dress in response to Mr. Jackson's posts and media coverage of this case.  See **Exhibit O**, which is a sampling of these social media comments. Some of these include: **"[H]e clearly copied their bottle design**" (@hdulic), Exhibit O at p. 15; "**Well dude you stole their design**" (@hollimanreube), *id.* at p. 16; **Come on bro, that looks 90% like XO"** (@big0zel), *id.* at p. 10; "**Dude you ripped it off**" (@therealreap), *id.* at p. 11; "**The bottle literally looks the same**" (@bradisthesht), *id.* at p. 2; "**[…] that's the same bottle,**

**different taste tho.**" (@papi_princesas), *id.* at p. 3; and "**Lol you stole they whole flow big dawg**" (@wassupwithb) (emphasis added). *id.* at p. 13.

94.    Other social media commentators have expressed their own confusion between the bottles.  For example, Instagram user @ittakesgutz7 stated "**Looks very similar I got them confused at the store**" in response to an intemperate Instagram post by Mr. Jackson regarding this action. *Id.* at p. 13.  Another stated: "**I can't lie. I thought it was remy on the previous post on the jet.**" (@k1ng_a.b). *Id.* at 14. Yet another remarked: "**it's not at a glance tho those two bottles could easily be mistaken**" (@dneewthlfe) *Id.* at p. 4.

95.    Further, third-party media has also recognized the striking similarity between the RÉMY BOTTLE Trade Dress and the INFRINGING BRANSON BOTTLE.  In referring to Jackson and Defendant Sire, one website observes "there's a strong possibility 50 can capitalize off the popularity of Cognac brands such as *Rémy Martin*…"    *See* https://www.hotnewhiphop.com/50-cent-inks-deal-with-branson-cognac-news.48917.html.

96.    For the reasons alleged herein, the likelihood of consumer confusion between the parties' respective bottles, and Rémy's association with the INFRINGING BRANSON BOTTLE is all but inevitable, with the balance of *Polaroid*[3] factors favoring Plaintiff.  As alleged above, the RÉMY BOTTLE Trade Dress is not merely strong, but famous. The parties' trade dress is highly similar.  Rémy's and Sire's products (XO cognac) are identical. The INFRINGING BRANSON BOTTLE deliberately mimics the RÉMY BOTTLE Trade Dress in order to unfairly trade off it.  Consumers have recognized the bottles' similarity and Defendants' willful intent in adopting it and some have already been confused.  Defendants have therefore not only created a likelihood of confusion, but have caused actual consumer confusion.

---

[3] *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

97.     There is also a likelihood that the INFRINGING BRANSON BOTTLE will dilute by blurring the exclusive association consumers make between the RÉMY BOTTLE Trade Dress and a single source of high-quality XO cognac. The INFRINGING BRANSON BOTTLE is, as noted, highly similar to the world-famous RÉMY BOTTLE Trade Dress.  The RÉMY BOTTLE Trade Dress has acquired distinctiveness—indeed, fame—and is widely recognized by the general public. There are no other significant users of a bottle similar to the RÉMY BOTTLE Trade Dress. Defendants intended to create an association between the INFRINGING BRANSON BOTTLE and the RÉMY BOTTLE Trade Dress.  Consumers have begun to associate the INFRINGING BRANSON BOTTLE with the RÉMY BOTTLE Trade Dress. Defendants' INFRINGING BRANSON BOTTLE has therefore diluted and is likely to continue to dilute the RÉMY BOTTLE Trade Dress by blurring its exclusive association with Plaintiff.

## CAUSES OF ACTION

## COUNT I

**Direct Infringement of U.S. Design Patent No. 638,649 Pursuant To 35 U.S.C. § 271(a)**
**(Against All Defendants)**

98.     Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

99.     Plaintiff is the lawful owner of all right, title, and interest in and to the D649 Patent.

100.     Defendants have infringed and continue to infringe the D649 Patent literally and/or under the doctrine of equivalents by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of New York and within this District, products infringing the ornamental design covered by the D649 Patent in violation of 35 U.S.C. § 271, including but not limited to Defendants' INFRINGING BRANSON BOTTLE.

101.    Defendants infringe the D649 Patent literally and under the doctrine of equivalents because, *inter alia*, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the D649 Patent and the INFRINGING BRANSON BOTTLE are each substantially the same clear bottle having an overall circular, toroidal (wheel-like) shape, with most of its surface area containing raised flat and angled quadrilateral and triangular facets. They are also substantially the same in that the center of their bottle's toroidal body is a recessed, flat circle, having no facets with a bottom that is flattened into an oval shape, and from the center and top of the toroidal body arises a short, cylindrical neck.  The resemblance of the claim of D649 Patent in the INFRINGING BRANSON BOTTLE is so substantially similar that it deceives the ordinary observer, inducing him to purchase one supposing it to be the other.

102.    To the extent there are any differences in features between the D649 Patent claim and the INFRINGING BRANSON BOTTLE, those differences involve features of the INFRINGING BRANSON BOTTLE that are either insignificant when compared to the totality of the D649 Patent claim or substantially similar ornamental equivalents of the comparable features claimed in the D649 Patent.

103.    Defendants' acts of infringement of the D649 Patent were undertaken without authority, permission, or license from Plaintiff.  Defendants' infringing activities violate 35 U.S.C. § 271.

104.    Defendants have engaged in a pattern of conduct demonstrating: Defendants' willful blindness of the D649 Patent; the objectively high likelihood that Defendants' actions constitute infringement of the D649 Patent and that the D649 Patent is valid and enforceable; and that this objectively defined risk was so obvious that Defendants knew or should have known that their pattern of conduct would infringe or induce others to infringe the D649 Patent.

105.     Defendants' infringement has damaged and continues to damage and injure Plaintiff. The injury to Plaintiff is irreparable and will continue unless and until Defendants are enjoined from further infringement.

106.     Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendants from the unlawful conduct alleged herein, including without limitation, Defendants' total profit from the manufacture, use, sale, and offer to sell the INFRINGING BRANSON BOTTLE pursuant to 35 U.S.C. § 289.

107.     Defendants have engaged and are engaged in willful and deliberate infringement of the D649 Patent.  Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

108.     Plaintiff is entitled to a permanent injunction preventing Defendants from further infringing the D649 Patent.

## COUNT II

### Indirect Infringement of U.S. Design Patent No. 638,649 Pursuant To 35 U.S.C. § 271(b) (Against All Defendants)

109.     Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

110.     In addition to directly infringing the D649 Patent in New York, Defendants indirectly infringe the D649 Patent in New York pursuant to 35 U.S.C. § 271(b).

111.     Defendants knowingly and actively aided and abetted the direct infringement of the D649 Patent by instructing and encouraging customers, purchasers, users, and manufacturers, including Defendants VETRO and VSPA, to make and use the INFRINGING BRANSON BOTTLE.  Such instructions and encouragement included, but are not limited to, advising one or

more Defendants and/or third parties to use the INFRINGING BRANSON BOTTLE in an infringing manner, providing a mechanism through which one or more Defendants and/or third parties may infringe the D649 Patent, and by advertising and promoting the use of the INFRINGING BRANSON BOTTLE in an infringing manner.

112. One or more of Defendants knew or were willfully blind to the fact that they were inducing others, including one or more of the other Defendants, customers, purchasers, users, and manufacturers to infringe by making and/or using either themselves or in conjunction with Defendants, embodiments of the D649 Patent claim.

113. Defendants' acts of infringement of the D649 Patent were undertaken without authority, permission, or license from Plaintiff. These infringing acts of Defendants and/or Defendants' customers, purchasers, users, and manufacturers violate 35 U.S.C. § 271(a) and (b). Those infringing activities have damaged and continue to damage and injure Plaintiff. The injury to Plaintiff is irreparable and will continue unless and until Defendants and their customers, purchasers, and users are enjoined from further infringement.

114. Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendants and their customers, purchasers, users, and manufacturers from the unlawful conduct alleged herein, including without limitation, Defendants' total profit from the manufacture, use, sale, and offer to sell the INFRINGING BRANSON BOTTLE pursuant to 35 U.S.C. § 289.

115. Defendants have engaged and are engaged in willful and deliberate infringement of the D649 Patent. Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

116.    Plaintiff is entitled to a permanent injunction preventing Defendants from further inducing infringement of the D649 Patent.

### COUNT III

**Indirect Infringement of U.S. Design Patent No. 638,649 Pursuant To 35 U.S.C. § 271(c)**
**(Against All Defendants)**

117.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

118.    In addition to directly infringing the D649 Patent in New York, Defendants indirectly infringe the D649 Patent in New York pursuant to 35 U.S.C. § 271(c).

119.    Defendants knowingly and actively aided and abetted the direct infringement of the D649 Patent by instructing and encouraging customers, purchasers, users, and manufacturers, including Defendants VETRO and VSPA, to make and use the INFRINGING BRANSON BOTTLE.  Such instructions and encouragement included, but are not limited to, advising one or more Defendants and/or third parties to use the INFRINGING BRANSON BOTTLE in an infringing manner, providing a mechanism through which one or more Defendants and/or third parties may infringe the D649 Patent, and by advertising and promoting the use of the INFRINGING BRANSON BOTTLE in an infringing manner.

120.    One or more of Defendants knew or were willfully blind to the fact that they were contributing to others' (including one or more of the other Defendants, customers, purchasers, users, and manufacturers) infringement of the D649 Patent claim.

121.    Defendants' acts of infringement of the D649 Patent were undertaken without authority, permission, or license from Plaintiff.  These infringing acts of Defendants and/or Defendants' customers, purchasers, users, and manufacturers violate 35 U.S.C. § 271(a), (b), and (c).  Those infringing activities have damaged and continue to damage and injure Plaintiff. The

injury to Plaintiff is irreparable and will continue unless and until Defendants and their customers, purchasers, and users are enjoined from further infringement.

122.    Defendants and their customers, purchasers, users, and manufacturers know or willfully blind themselves from knowledge that the INFRINGING BRANSON BOTTLE is especially made or adapted to be used in an infringement of the D649 Patent.

123.    Defendants and their customers, purchasers, users, and manufacturers know or willfully blind themselves from knowledge that the INFRINGING BRANSON BOTTLE is not a staple article of commerce suitable for substantial non-infringing uses.

124.    Plaintiff is entitled to a complete accounting of all revenue and profits derived by Defendants and their customers, purchasers, and users from the unlawful conduct alleged herein, including without limitation, Defendants' total profit from the manufacture, use, sale, and offer to sell the INFRINGING BRANSON BOTTLE pursuant to 35 U.S.C. § 289.

125.    Defendants have engaged and are engaged in willful and deliberate infringement of the D649 Patent.  Such willful and deliberate infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285.

126.    Plaintiff is entitled to a permanent injunction preventing Defendants from further infringing the D649 Patent.

## <u>COUNT IV</u>

### Violation of Section 32(1) of the Lanham Act
### (Against Defendant Sire)

127.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

128.    The INFRINGING BRANSON BOTTLE blatantly copies and is confusingly similar to the RÉMY BOTTLE Trade Dress because the INFRINGING BRANSON BOTTLE has:

    a.  a toroidal shape,

    b.  a flat, recessed center,

    c.  ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

    d.  creates a scalloped appearance when the bottle is viewed from the front or back.

129.    Defendant Sire's distribution, advertisement, offering for sale, and sale of the INFRINGING BRANSON BOTTLE constitute a use in commerce that is likely to continue to cause confusion, to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

130.    Defendant Sire's use of the INFRINGING BRANSON BOTTLE commenced well after Plaintiff's use and extensive worldwide advertising of the RÉMY BOTTLE Trade Dress.

131.    Upon information and belief, the activities of the Defendant Sire in selling XO cognac in the INFRINGING BRANSON BOTTLE have been done with the express intention of confusing, misleading, and deceiving purchasers and members of the public into believing they are purchasing Plaintiff's products.

132.    Defendant Sire's activities were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's prior rights in the RÉMY BOTTLE Trade Dress and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

133.    Plaintiff has no adequate remedy at law.  Defendant Sire's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

134.    Due to Defendant Sire's violations of the Lanham Act, Plaintiff is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial, attorneys' fees, costs, and disbursements.

## COUNT V

**Violation of the Section 43(c) Lanham Act (Federal Trademark Dilution Revision Act)
(Against Defendant Sire)**

135.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

136.    The INFRINGING BRANSON BOTTLE blatantly copies and is highly similar to the RÉMY BOTTLE Trade Dress because the INFRINGING BRANSON BOTTLE has:

    a.  a toroidal shape,

    b.  a flat, recessed center,

    c.  ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

    d.  creates a scalloped appearance when the bottle is viewed from the front or back.

137.    Section 43(c) of Lanham Act, known as the Federal Trademark Dilution Revision Act, provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of

the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

138.    The RÉMY BOTTLE Trade Dress is distinctive and a famous mark within the meaning of Section 43(c) and known worldwide and throughout the United States.

139.    The RÉMY BOTTLE Trade Dress has been in use for over 35 years and became distinctive and famous well before Defendants' wrongful acts alleged herein.

140.    Defendant Sire's use of the INFRINGING BRANSON BOTTLE is likely to cause dilution by blurring the exclusive association consumers have when exposed to the RÉMY BOTTLE Trade Dress, that is, consumer identification of the RÉMY BOTTLE Trade Dress as originating from a single source, namely Plaintiff.

141.    Therefore, Defendant Sire's use of the INFRINGING BRANSON BOTTLE is likely to blur the distinctiveness of the RÉMY BOTTLE Trade Dress.

142.    Plaintiff has no adequate remedy at law.  Defendant Sire's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

143.    Due to Defendant Sire's violations of the Federal Trademark Dilution Act, Plaintiff is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial, attorneys' fees, costs, and disbursements.

## COUNT VI

### Violation of Section 43(a) of the Lanham Act
### (Against Defendant Sire)

144.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

35

145.     The INFRINGING BRANSON BOTTLE blatantly copies and is confusingly similar to the RÉMY BOTTLE Trade Dress because the INFRINGING BRANSON BOTTLE has:

    a.   a toroidal shape,

    b.   a flat, recessed center,

    c.   ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

    d.   creates a scalloped appearance when the bottle is viewed from the front or back.

146.     Section 43(a)(1) of the federal Lanham Trademark Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which — (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or — (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C.A. § 1125(a).

147.     Defendant Sire's distribution, advertisement, offering for sale, and sale of XO cognac in the INFRINGING BRANSON BOTTLE constitute false designations of origin, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Sire's product with the RÉMY BOTTLE Trade Dress of Plaintiff, or as to the origin, sponsorship, or approval of Defendant Sire's products by Plaintiff, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

148.     Upon information and belief, the activities of the Defendant Sire in selling such infringing products have been done with the express intention of confusing, misleading, and

deceiving purchasers and members of the public into believing they are purchasing Plaintiff's products.

149.    Defendant Sire's actions have continued in spite of the Defendants' knowledge that the use of the RÉMY BOTTLE Trade Dress, or any reproductions, counterfeits, copies, or colorable imitations of the same, is in violation of Plaintiff's rights.

150.    Defendant Sire's actions were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's legal rights.

151.    Plaintiff has no adequate remedy at law.  Defendant Sire's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

152.    Due to Defendant Sire's violations of the Lanham Act, Plaintiff is entitled to injunctive relief, actual, compensatory, and punitive damages in an amount to be determined at trial, attorneys' fees, costs, and disbursements.

## COUNT VII

### Contributory Trademark Infringement
### (Against Defendants VETRO and VSPA)

153.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

154.    The INFRINGING BRANSON BOTTLE blatantly copies and is confusingly similar to the RÉMY BOTTLE Trade Dress because the INFRINGING BRANSON BOTTLE has:

      a.  a toroidal shape,

      b.  a flat, recessed center,

c.  ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

d.  creates a scalloped appearance when the bottle is viewed from the front or back.

155.   Defendants VETRO's and VSPA's conduct, i.e., intentionally inducing third-party sellers and/or distributors to infringe the RÉMY BOTTLE Trade Dress by, upon information and belief, supplying, manufacturing, selling, and/or transporting the INFRINGING BRANSON BOTTLE to said sellers and/or distributors for sale to consumers in the United States, constitutes contributory trademark infringement under the Lanham Act and the common law of the State of New York.

156.   Defendants VETRO's and VSPA's conduct, i.e., upon information and belief, continuing to provide manufacturing services to Defendant Sire and to supply, sell, and/or transport the INFRINGING BRANSON BOTTLE to third-party sellers and/or distributors in the United States, despite having knowledge or reason to know that Defendant Sire is engaging in trademark infringement of the RÉMY BOTTLE Trade Dress, constitutes contributory trademark infringement in violation of the Lanham Act and the common law of the State of New York.

157.   Defendants VETRO's and VSPA's actions were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's legal rights.

158.   Plaintiff has no adequate remedy at law.  Defendants VETRO's and VSPA's conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trade dress rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

## COUNT VIII

**Declaration Denying U.S. Trademark Application or Directing Defendant
Sire to Abandon U.S. Trademark Application
Serial No. 88/788,224 for the INFRINGING BRANSON BOTTLE
(Against Defendant Sire)**

159.     Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

160.     The INFRINGING BRANSON BOTTLE blatantly copies and is highly and confusingly similar to the RÉMY BOTTLE Trade Dress, because the INFRINGING BRANSON BOTTLE has:

    a.   a toroidal shape,

    b.   a flat, recessed center,

    c.   ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

    d.   creates a scalloped appearance when the bottle is viewed from the front or back.

161.     The INFRINGING BRANSON BOTTLE is very similar to the RÉMY BOTTLE Trade Dress such that use of the INFRINGING BRANSON BOTTLE is likely to cause confusion or mistake or deceive consumers as to whether Plaintiff is affiliated with, sponsors or endorses the sale of the XO cognac in the INFRINGING BRANSON BOTTLE.

162.     The registrability of the INFRINGING BRANSON BOTTLE is directly related to the subject matter of this action, namely the trademark infringement and dilution of the RÉMY BOTTLE Trade Dress by the INFRINGING BRANSON BOTTLE.

163.     The RÉMY BOTTLE Trade Dress is the subject of multiple U.S. trademark registrations.

164.    Accordingly, under 15 U.S.C. § 1119, and its other authority, this Court should deny U.S. trademark application Serial Number 88/788224.  Alternatively, this Court should direct Defendant Sire to abandon, with prejudice, Serial Number 88/788224.

165.    Additionally, this Court should enjoin Defendants, their successors, privies and assigns, and any person or entity acting on their behalf or in concert with them from filing any application with the U.S. Trademark Office for the INFRINGING BRANSON BOTTLE or any bottle confusingly similar thereto.

## COUNT IX

### Common Law Trademark Infringement
### and Unfair Competition Claim Under New York Law
### (Against All Defendants)

166.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

167.    The INFRINGING BRANSON BOTTLE blatantly copies and is confusingly similar to the RÉMY BOTTLE Trade Dress, because the INFRINGING BRANSON BOTTLE has:

    a.  a toroidal shape,

    b.  a flat, recessed center,

    c.  ridging on the front and back surfaces surrounding the recessed center of the
        bottle and encircling the outward edges, which

    d.  creates a scalloped appearance when the bottle is viewed from the front or back.

168.    Plaintiff's RÉMY BOTTLE Trade Dress is a valid and legally protectable mark and is used in commerce in connection with XO cognac.

169.    There is a likelihood of confusion arising from Defendants' use of the INFRINGING BRANSON BOTTLE for XO cognac.

170.    Defendants' use of the INFRINGING BRANSON BOTTLE constitutes common law trademark infringement and unfair competition, in violation of New York law.

171.    Defendants VETRO's and VSPA's conduct, i.e., upon information and belief, continuing to provide manufacturing services to Defendant Sire and to supply, sell, and/or transport the INFRINGING BRANSON BOTTLE to third-party sellers and/or distributors in the United States, despite having knowledge or reason to know that Defendant Sire is engaging in trademark infringement of the RÉMY BOTTLE Trade Dress, constitutes contributory trademark infringement in violation of the Lanham Act and the common law of the State of New York.

172.    Defendants actions were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's legal rights.

173.    Plaintiff has no adequate remedy at law.  Defendants conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

## COUNT X

### Injury to Business Reputation; Dilution under N.Y. Gen. Bus. Law § 360-l
### (Against Defendant Sire)

174.    Plaintiff repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

175.    The RÉMY BOTTLE Trade Dress has acquired distinctiveness.

176.    The INFRINGING BRANSON BOTTLE blatantly copies and is substantially similar to the RÉMY BOTTLE Trade Dress, because the INFRINGING BRANSON BOTTLE has:

    a.  a toroidal shape,

    b.  a flat, recessed center,

    c.  ridging on the front and back surfaces surrounding the recessed center of the bottle and encircling the outward edges, which

    d.  creates a scalloped appearance when the bottle is viewed from the front or back.

177.    Defendants' marketing and sale of the INFRINGING BRANSON BOTTLE constitutes misuse and misappropriation of Plaintiff's RÉMY BOTTLE Trade Dress.

178.    Defendants' misuse and misappropriation of Plaintiff's RÉMY BOTTLE Trade Dress sows confusion as to the source and origin of Defendants' INFRINGING BRANSON BOTTLE and dilutes and impairs the distinctiveness of Plaintiff's famous RÉMY BOTTLE Trade Dress.

179.    Defendants' imitation, reproduction, counterfeiting, copying, and/or use of the INFRINGING BRANSON BOTTLE has injured and, unless enjoined, is likely to continue to injure Plaintiff's business reputation and/or likely to dilute the distinctive quality of the RÉMY BOTTLE Trade Dress in violation of Section 360-l of the New York General Business Law.

180.    Plaintiff has no adequate remedy at law.  Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Plaintiff's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

181.    Due to Defendant's violations of New York law, Plaintiff is entitled to injunctive and equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.      A judgment entered in favor of Plaintiff on its claim that each of Defendant Sire, Defendant VETRO, and Defendant VSPA has infringed the D649 Patent;

B.      A judgment entered in favor of Plaintiff on its claim that Defendant Sire has infringed and diluted Plaintiff's RÉMY BOTTLE Trade Dress;

C.      A judgment entered in favor of Plaintiff on its claim that each of Defendant VETRO and Defendant VSPA has contributorily infringed Plaintiff's RÉMY BOTTLE Trade Dress;

D.      A permanent injunction restraining the Defendants from:

    i.    making, importing, using, selling, and offering to sell infringing products practicing the D649 Patent and from otherwise infringing, contributing to infringement of, and actively inducing infringement of the D649 Patent;

    ii.    directly or indirectly infringing Plaintiff's registered or common-law trademarks for the RÉMY BOTTLE Trade Dress in any manner, including but not limited to, manufacturing, distributing, advertising, selling, or offering for sale any products that infringe the RÉMY BOTTLE Trade Dress; and

    iii.    using the RÉMY BOTTLE Trade Dress or any reproduction, counterfeit, copy, or colorable imitation of such mark in connection with the manufacture, distribution, advertising, display, marketing, sale, offering for sale, or other use of any product; and

    iv.    using any trade dress, labeling, or bottle design which is a reproduction, counterfeit, copy, or colorable imitation of the RÉMY BOTTLE Trade Dress for its products in connection with the manufacture, distribution, advertising, display, marketing, sale, offering for sale, or other use of any product;

E.      An Order that Plaintiff be authorized to seize any other products that reproduce, copy, counterfeit, or imitate the RÉMY BOTTLE Trade Dress, including the INFRINGING BRANSON BOTTLE, which are in Defendants' possession, custody, or control;

F.      An Order directing the U.S. Trademark Office to refuse, or the Defendant Sire Spirits LLC to abandon, U.S. Trademark Application Serial No. 88/788224 and directing Defendants, their successors, privies and assigns, and any person or entity acting on their behalf or in concert with one or both of them, to refrain from filing any new U.S. trademark applications for the INFRINGING BRANSON BOTTLE or a bottle confusingly similar thereto;

G.      A judgment and order that Defendants make an accounting to Plaintiff and pay over to Plaintiff:

     i.      the extent of Defendants' total profits and revenues realized and derived from its infringement of the D649 Patent and Plaintiff's RÉMY BOTTLE Trade Dress, and actual damages to Plaintiff in an amount not less than a reasonable royalty for Defendants' infringements;

    ii.      exemplary, compensatory punitive, and/or treble damages pursuant to 35 U.S.C. § 284 for Defendants' malicious, willful, and deliberate infringement, and as permitted under other applicable laws;

H.      An Order deeming this case an exceptional case pursuant to 15 U.S.C. § 1117(a) and (b) and 35 U.S.C. § 285, and that Defendant Sire be deemed liable for and be ordered to pay Plaintiff, in addition to the aforesaid damages, Plaintiff's costs and attorneys' fees, and that the amount of actual damages be trebled; and

I.      Such other and further relief as the Court may deem just and necessary.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by a jury on all issues so triable.

Dated:  January 19, 2022
         New York, New York

Respectfully submitted,

/s/Jeanne Hamburg
_____
Joseph Farco
jfarco@norris-law.com

Jeanne Hamburg
jhamburg@norrislaw.com

Bruce S. Londa
bslonda@norris-law.com

David H. Siegel
dsiegel@norris-law.com

Benjamin Schwartz
bschwartz@norris-law.com

NORRIS MCLAUGHLIN, P.A.
7 Times Square, 21st Floor
New York, NY 10036
212-808-0700

**ATTORNEYS FOR PLAINTIFF**
**E. RÉMY MARTIN & CO.**