**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

E. RÉMY MARTIN & CO.,                       :

            Plaintiff,                  :

      v.                                      :

SIRE SPIRITS, LLC, VETROELITE INC., and     :
VETROELITE S.P.A.,

          Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.: 1:21-cv-06838-AKH

<u>**DEFENDANTS SIRE SPIRITS, LLC, VETROELITE INC., AND VETROELITE S.P.A.'S**</u>
<u>**CLAIM CONSTRUCTION BRIEF**</u>

**AKERMAN LLP**

Craig Weiner
Reena Jain
1251 Avenue of the Americas, 37th Fl.
New York, NY 10020
(212) 880-3800

Brian C. Bianco (*pro hac vice*)
Kourtney A. Mulcahy (*pro hac vice*)
71 South Wacker Drive, 47th Fl.
Chicago, IL 60606
(312) 634-5700

*Counsel for Defendant Sire Spirits, LLC*

**PRYOR CASHMAN LLP**

Brad D. Rose
Jeffrey L. Snow
Matthew S. Barkan
Felicity S. Kohn
7 Times Square
New York, NY 10036
(212) 421-4100

*Counsel for Defendants Vetroelite Inc. and Vetroelite S.p.A.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTUAL BACKGROUND ........................................................................... 3

    A.    The D649 Patent ............................................................................................... 3

    B.    The Prosecution History of the D649 Patent and Exemplary Prior Art ................. 6

        1.    The Cited Prior Art References ................................................................ 6

        2.    The Uncited Prior Art References ........................................................... 9

    C.    The History of This Action .............................................................................. 11

LEGAL STANDARD ....................................................................................................... 12

    A.    Claim Construction ........................................................................................ 12

        1.    Claim Indefiniteness Is a Matter of Claim Construction ......................... 12

        2.    Design Patent Claim Construction Is a Multi-Step Process ..................... 13

ARGUMENT .................................................................................................................. 14

    A.    The D649 Patent Is Invalid as Indefinite Because it Does Not Give Notice
        of What Design Is Claimed .............................................................................. 14

    B.    In the Alternative, This Court Should Adopt Defendants' Proposed Claim
        Construction Because it Follows Federal Circuit Precedent "to a Tee" .............. 18

        1.    The Scope of the Claim Is Limited by the Drawings ............................... 18

        2.    The Scope of the Claim Is Limited by the Functional Features of the
                Design and the Functional Purpose of the Design as a Whole ................. 19

        3.    The Scope of the Claim Is Limited by the Prior Art References ............... 23

    C.    This Court Should Reject Rémy Martin's Proposed Claim Construction
        Because it Conflicts With Federal Circuit Precedent and Renders the D649
        Patent Indefinite ............................................................................................ 29

        1.    The Scope of the Claim Should Not Be Reduced to a Detailed Verbal
                Description .......................................................................................... 29

        2.    The Scope of the Claim Is Not Limited by Rémy Martin's Proposed
                Definition of "a Decanter" ................................................................... 31

        3.    The Scope of the Claim Is Rendered Indefinite by Rémy Martin's
                Proposed Claim Construction ............................................................... 31

D.      This Court Should Not Consider Rémy Martin or Sire Sprits' Bottles, Let Alone Compare the D649 Patent to Sire Spirits' Bottle, in Claim Construction .......................................................................................... 32

CONCLUSION ......................................................................................................... 34

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*,
   310 F. Supp. 3d 457 (S.D.N.Y. 2018), *aff'd*, 829 F. App'x 529 (Fed. Cir. 2020)...................12

*Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
   630 F. Supp. 2d 273 (W.D.N.Y. 2008)...................................................................................30

*Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*,
   No. 4:06CV01191 ERW, 2007 WL 4564196 (E.D. Mo. Dec. 21, 2007)...............................33

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)........................................................................................ *passim*

*Elmer v. ICC Fabricating, Inc.*,
   67 F.3d 1571 (Fed. Cir. 1995).............................................................................................33

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
   No. 15 Civ. 10154 (PAE), 2018 WL 3773986 (S.D.N.Y. Aug. 9, 2018) (Engelmayer, J.) ....29

*Hoffman v. Impact Confections, Inc.*,
   No. 08cv1597 BTM(NLS), 2010 WL 99072 (S.D. Cal. Jan. 6, 2010) ...................................15

*Hutzler Mfg. Co., Inc. v. Bradshaw Int'l, Inc.*,
   No. 11 Civ. 7211 (PGG), 2012 WL 3031150 (S.D.N.Y. July 25, 2012) (Gardephe, J.).........29

*In re Maatita*,
   900 F.3d 1369 (Fed. Cir. 2018)...........................................................................................13

*In re Mann*,
   861 F.2d 1581 (Fed. Cir. 1988)......................................................................................12, 18

*Lanard Toys, Ltd. v. Dolgencorp LLC*,
   958 F.3d 1337 (Fed. Cir. 2000)...................................................................................... *passim*

*Lanard Toys Ltd. v. Toys "R" US-Delaware, Inc.*,
   No. 3:15-cv-849-J-34PDB, 2019 WL 1304290 (M.D. Fla. Mar. 21, 2019), *aff'd sub nom.*
   *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2000)...........................14, 23

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).......................................................12

*Metrokane, Inc. v. Wine Enthusiast*,
   185 F. Supp. 2d 321 (S.D.N.Y. 2002) (Conner, J.).................................................................30

*Myco Indus., Inc. v. BlephEx, LLC*,
    955 F.3d 1 (Fed. Cir. 2020)..................................................................................33

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)..........................................................................................13

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997).........................................................................20

*Saverglass, Inc. v. Vitro Packaging, LLC*,
    130 F. Supp. 3d 747 (E.D.N.Y. 2015) ...............................................................30

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)...........................................................................12

*Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*,
    665 F. Supp. 2d 357 (S.D.N.Y. 2009) (Holwell, J.), *aff'd*, 374 F. App'x 956 (Fed. Cir. 2010)
    ...........................................................................................................................29

**Statutes**

35 U.S.C. § 112(b) ..........................................................................................13, 16

35 U.S.C. § 171(a) ..........................................................................................19, 23

**Other Authorities**

Design Patent Application Guide, U.S. Patent & Trademark Office............................15

Manual of Patent Examining Procedure § 1503.01 ....................................................30

Manual of Patent Examining Procedure § 1503.02 .......................................15, 16, 17

Manual of Patent Examining Procedure § 1504.05 ....................................................16

Defendants Sire Spirits, LLC ("Sire Spirits") and Vetroelite Inc. and Vetroelite S.p.A. (collectively, "Vetroelite," and together with Sire Spirits, the "Defendants") respectfully submit this claim construction brief in accordance with this Court's Order Regulating Proceedings and in advance of the Markman hearing regarding E. Rémy Martin & Co.'s ("Rémy Martin") asserted design patent, U.S. D638,649 (the "D649 Patent"). *See* Dkt. Nos. 92, 97.

## PRELIMINARY STATEMENT

The D649 Patent is invalid as indefinite.[1] One skilled in the art, viewing the design as would an ordinary observer, **would not understand the scope of the design of the D649 Patent with reasonable certainty**. The D649 Patent's figures do not include surface shading, broken lines, or cross-sectional views, and thus do not show the character and contour of the surfaces, or distinguish between any open and solid areas of the decanter. Based on the claim and visual disclosure of the D649 Patent, it is impossible to understand if the center section of the body of the claimed decanter is: (1) an open space (*i.e.*, the center of a "donut"); (2) a single solid portion with no internal volume; or (3) two solid portions (front and rear) with internal volume.

  

Option 1 (annotated)          Option 2 (annotated)          Option 3 (annotated)

---

[1] The D649 Patent is indefinite as claimed, but also under Rémy Martin's proposed claim construction. First, the D649 Patent's figures do not include surface shading, broken lines indicating internal volume, or cross-sectional views, and thus the patent is unbounded and indefinite. Separately, however, Rémy Martin's proposed claim construction is internally inconsistent, which renders the proposed construction unbounded and indefinite.

As a result, the D649 Patent is invalid as indefinite.

In the alternative, if the D649 Patent is not found to be indefinite, this Court should adopt Defendants' proposed claim construction.[2] Defendants' proposed claim construction is based on over a decade of well-accepted precedent set forth by the Federal Circuit, which was recently confirmed by the Federal Circuit as following "[its] claim construction directives to a tee."

Federal Circuit precedent dictates that the D649 Patent claim should be construed as follows:

    i.   <u>First</u>, this Court should consider **the drawings** of the claimed design because drawings are the claims; and

    ii.   <u>Second</u>, this Court should clarify the scope of the protected subject matter:

        a.   This Court should consider **the functional features** of the design, as well as **the functional purpose** of the design as a whole, because a design patent can only protect an ornamental design and excludes functional features; and

        b.   This Court should consider the various features of the claimed design as they relate to **the prior art** and how the claimed design is distinct from the prior art because a design patent can only protect a new and original design.

This process demands that the overall design of the D649 Patent be found primarily functional. As discussed herein most of the features of the D649 Patent are functional and found in the prior art. To the extent the D649 Patent has any scope, it is narrow and cannot cover the general design

---

[2] If the D649 Patent is not indefinite, then the drawings of the D649 Patent plainly show an open space (*i.e.*, the center of a "donut") in the center section of the body of the design. The D649 Patent does not include surface shading, broken lines, or cross-sectional views, and thus does not indicate that the center section of the body of the design has a solid surface. Accordingly, Defendants' proposed claim construction, as to the center section of the design, is that the D649 Patent has an open space (*i.e.*, the center of a "donut") as shown in "Option 1" above.

concepts shown therein.

In contrast, Rémy Martin's proposed claim construction is directly contrary to well-established law. <u>First</u>, Rémy Martin attempts to improperly define "a decanter." Not only is a verbal construction of the term "decanter" contrary to Federal Circuit law, but Rémy Martin's construction provides restrictions on the type of material (*i.e.*, glass) and contents (*i.e.*, wine and other alcoholic drinks) that are not relevant to the design scope. And <u>second</u>, Rémy Martin offers an eight-paragraph verbal description that merely purports to describe the figures in words. This approach offers nothing in terms of construing the D649 Patent and has been repeatedly rejected by the Federal Circuit and this district court. Moreover, the verbal description Rémy Martin offers is not even close to an accurate representation of the figures. Rémy Martin, using a detailed verbal description, seeks to expand the scope and make the bounds of the D649 Patent so ambiguous and imprecise that one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope with reasonable certainty. Rémy Martin's process and substance are improper and should be rejected.

## **RELEVANT FACTUAL BACKGROUND**

**A.**     **The D649 Patent**

The D649 Patent was issued to inventor Sébastien Servaire and assignee Rémy Martin on May 31, 2011. The D649 Patent claims: "The ornamental design for a decanter, as shown and described." Dkt. No. 68-1 (Ex. A.). The patent is directed to a single embodiment in solid lines, and does not include surface shading, broken lines, or cross-sectional views. *See id.* The following figures are reproduced from the D649 Patent and show perspective, front, rear, top, bottom, and side views of a decanter.

| Description | Figure |
|---|---|
| "FIG. **1** is a front perspective view of a decanter according to my new design." |  |
| "FIG. **2** is a front elevational view thereof." |  |
| "FIG. **3** is a rear elevational view thereof." |  |

| Description | Figure |
|---|---|
| "FIG. **4** is a top plan view thereof." |  |
| "FIG. **5** is a bottom plan view thereof." |  |
| "FIG. **6** is a left side elevational view thereof; and," |  |
| "FIG. **7** is a right side elevational view thereof." |  |

While Rémy Martin failed to cite any reference during the prosecution of the D649 Patent, the examiner cited 23 references that are listed on the face of the D649 Patent. *See* Dkt. No. 68-1 (Ex. A.); Dkt. No. 83-1. In her search for prior art references, the examiner searched subclass

D07/598 (*see* Dkt. No. 83-1 at 15, 17), titled, "Cruet, decanter or pitcher type," and defined as a "[d]esign with an appearance of a bottle or jar that includes a pouring feature," which "[i]ncludes combination of sugar container and creamer with stand." Jain Decl.[3] Ex. 1. The examiner also searched subclasses D09/651 and D07/300. *See* Dkt. No. 83-1 at 15, 17.

## B.    The Prosecution History of the D649 Patent and Exemplary Prior Art

While the D649 Patent issued without rejection from the patent examiner, the examiner cited 23 references in connection with the examination. Rémy Martin did not provide any references during prosecution.

### 1.    The Cited Prior Art References[4]

The below table includes prior art references cited by the examiner on the face of the D649 Patent that are substantially similar to the design of the patent. *See* Jain Decl. Exs. 2–10. In citing prior art references to the design of the D649 Patent, the examiner included designs for, *inter alia*, "a bottle," "a water bottle," and "a fragrance bottle." The references cited by the examiner were not limited to Rémy Martin's proposed, improper limitation of "a decorative glass container for wine and other alcoholic drinks." To the extent the claim is not indefinite, these references indicate a narrow construction is appropriate.

---

[3] Declaration of Reena Jain, Esq., dated June 2, 2022, and filed herewith.
[4] All 23 references cited on the face of the design patent are included in the prior art.

| U.S. Patent No. | Inventor | Date Issued | Claim | Exemplary Figure |
|---|---|---|---|---|
| D77,805 | Jean W. Bicks | Feb. 26, 1929 | "The ornamnetal design for a bottle, as shown." |  |
| D284,938 | Maurice Jedwab and Henri Jedwab | Aug. 5, 1986 | "The ornamental design for a bottle, as shown and described." |  |
| D304,687 | James Miyakawa | Nov. 21, 1989 | "The ornamental design for a bottle, as shown and described." |  |

| U.S. Patent No. | Inventor | Date Issued | Claim | Exemplary Figure |
|---|---|---|---|---|
| D304,688 | James Miyakawa | Nov. 21, 1989 | "The ornamental design for a bottle, as shown and described." |  |
| D375,686 | Marie Gray | Nov. 19, 1996 | "The ornamental design for a combined bottle and cap, as shown and described." |  |
| D570,699 | Richard Norman Zach Wagner | June 10, 2008 | "The ornamnetal design for a water bottle, as shown and described." |  |

| U.S. Patent No. | Inventor | Date Issued | Claim | Exemplary Figure |
|---|---|---|---|---|
| D586,226 | Douglas Lloyd | Feb. 10, 2009 | "The ornamental design for a fragrance bottle, substantially as shown and described." |  |
| D610,916 | Teresa Yeung, Scott C. Roman, and James Nevins | Mar. 2, 2010 [Priority Date: May 8, 2007] | "The ornamental design for a fragrance bottle, as shown and described." |  |
| D626,422 | Douglas Lloyd | Nov. 2, 2010 [Priority Date: July 24, 2007] | "The ornamental design for a fragrance bottle, substantially as shown and described." |  |

### 2.    The Uncited Prior Art References

The below table includes prior art references not considered by the examiner, but that are also substantially similar to the D649 Patent. *See* Jain Decl. Exs. 11–16. These references include designs for "canteens," "a bottle," and "a decanter." To the extent the claim is not indefinite, these references indicate a narrow construction is appropriate.

9

| U.S. Patent No. | Inventor | Date Issued | Claim | Exemplary Figure |
|---|---|---|---|---|
| 872,408 | Hedley J. Donahoe | Dec. 3, 1907 | "My invention is concerned with canteens and similar articles …." |  |
| D128,668 | Arnold I. Lorenzen | Aug. 5, 1941 | "The ornamental design for a bottle, substantially as shown and described." |  |
| D257,124 | John A. Grip | Sep. 30, 1980 | "The ornamental design for a decanter, substantially as shown and described." |  |

| U.S. Patent No. | Inventor | Date Issued | Claim | Exemplary Figure |
|---|---|---|---|---|
| D275,369[5] | André J. Hériard-Dubreuil | Sept. 4, 1984 | "The ornamental design for a bottle, as shown." |  |
| D526,197 | Richard Lauret | Aug. 8, 2006 | "The ornamental design for a bottle, as shown." |  |
| D634,977 | Philippe Mouquet | March 29, 2011 [Priority Date: Apr. 15, 2008] | "The ornamental design for a decanter, as shown and described." |  |

## C.    The History of This Action

This Court ordered an expedited claim construction proceeding to determine the scope of

the claim of the D649 Patent. *See* Dkt. Nos. 92, 97. The parties exchanged their preliminary claim

---

[5] Rémy Martin is the assignee of U.S. Patent No. D275,369 (the "D369 Patent").

constructions on May 23, 2022, and met and conferred by Microsoft Teams for approximately 40 minutes on May 31, 2022.

While Defendants have proved the claim is invalid for indefiniteness, to the extent the claim is not indefinite, Defendants' proposed construction follows the Federal Court's claim construction directives "to a tee." Specifically, Defendants' proposed construction is limited by the drawings and considers the functional features, functional purpose, and prior art references. *See* Dkt. No. 104-1. Rémy Martin, on the other hand, contravenes Federal Circuit precedent by attempting to define "a decanter" and providing an eight paragraph verbal description, which will only serve to unduly broaden the scope of the claim such that it remains indefinite. *See* Dkt. No. 103.

## **LEGAL STANDARD**

### A.    **Claim Construction**

"Design patents have almost no scope." *In re Mann,* 861 F.2d 1581, 1581 (Fed. Cir. 1988). Nevertheless, "trial courts have a duty to conduct claim construction in design patent cases, as in utility patent cases." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008); *cf. Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) ("the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court"), *aff'd*, 517 U.S. 370 (1996). While this Court should first look to the intrinsic evidence, including the patent itself, it may subsequently look to the extrinsic evidence, including expert testimony. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996) (citing *Markman*, 52 F.3d at 979–980).

#### 1.    **Claim Indefiniteness Is a Matter of Claim Construction**

As an initial matter, indefiniteness is a matter properly taken up at claim construction. *See Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*, 310 F. Supp. 3d 457, 462 (S.D.N.Y. 2018)

("Indefiniteness is a matter of claim construction, and the same principles that govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." (citation and quotation omitted)), *aff'd*, 829 F. App'x 529 (Fed. Cir. 2020). The Patent Act articulates the following definiteness requirement: "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). Accordingly, the Federal Circuit has held that a "design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, **would not understand the scope of the design with reasonable certainty** based on the claim and visual disclosure." *In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018) (emphasis added).[6] The purpose of the definiteness requirement "is to ensure that the disclosure is clear enough to give potential competitors (who are skilled in the art) **notice of what design is claimed—and therefore what would infringe**." *Id.* at 1376 (emphasis added). As explained below, Rémy Martin's claim does not give such notice to an ordinary observer, let alone anyone who makes, uses, offers for sale, or sells a decanter.

### 2.      Design Patent Claim Construction Is a Multi-Step Process

To the extent this Court does not find claim indefiniteness, it should follow *Egyptian Goddess* and subsequent Federal Circuit cases to narrowly construe the claim. In *Egyptian Goddess*, the Federal Circuit held that district courts must: (i) "recognize[] that design patents typically are claimed as shown in drawings"; (ii) "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional"; and (iii) "point out … various features of the claimed design as they relate to … the prior art." 543 F.3d at 679–80

---

[6] *See also Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.").

(internal quotations and citations omitted). And recently, the Federal Circuit confirmed its *Egyptian Goddess* standard and commended the lower court for following that case "to a tee." *See Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2000); *see also Lanard Toys Ltd. v. Toys "R" US-Delaware, Inc.*, No. 3:15-cv-849-J-34PDB, 2019 WL 1304290, at *9 (M.D. Fla. Mar. 21, 2019) ("In *Egyptian Goddess, Inc. v. Swisa, Inc.*, the Federal Circuit clarified the appropriate form of claim construction in the context of design patents."), *aff'd sub nom. Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337.

## **ARGUMENT**

The D649 Patent is invalid as indefinite. In the alternative, this Court should adopt Defendants' proposed construction in its entirety and reject Rémy Martin's proposed construction.

### A.   **The D649 Patent Is Invalid as Indefinite Because it Does Not Give Notice of What Design Is Claimed**

This Court should find the claim invalid as indefinite because it is impossible to understand if the center section of the body of the claimed decanter is: (1) an open space (*i.e.*, the center of a "donut"); (2) a single solid portion with no internal volume; or (3) two solid portions (front and rear) with internal volume. Specifically, the D649 Patent does not include surface shading, broken lines indicating internal volume, or cross-sectional views, and thus conflicts with the Patent Act's definiteness requirement. The lack of surface shading or cross-sectional views, particularly with respect to the center section of the body, renders the claim indefinite. Indeed, the Manual of Patent Examining Procedure ("MPEP") specifically states:

> [S]urface shading … may be necessary in particular cases to shade the figures to show clearly the character and contour of all surfaces of any 3-dimensional aspects of the design. **Surface shading is also necessary to distinguish between any open and solid areas of the article.** … Lack of appropriate surface shading in the drawing as filed may render the design nonenabling and indefinite under 35 U.S.C. 112(a) and (b), (for applications filed prior to September 16, 2012, pre-AIA 35 U.S.C. 112, first and second paragraphs).

MPEP § 1503.02 (9th ed. Rev. June 2020) (emphasis added)[7]; *see also* Design Patent Application Guide, U.S. Patent & Trademark Office, https://www.uspto.gov/patents/basics/types-patent-applications/design-patent-application-guide#surface (similar).[8]

The following figures, reproduced from the D649 Patent, evidence the claim indefiniteness.

| D649 Patent | Indefiniteness |
|---|---|
|  | Figure 1 does not contain any surface shading or cross-sectional views, particularly with respect to the center section of the body. No other figure in the D649 Patent contains surface shading or cross-sectional views. |
|  | Figure 2 does not contain any surface shading or cross-sectional views, particularly with respect to the center section of the body. No other figure in the D649 Patent contains surface shading or cross-sectional views. |

[7] Available at https://mpep.uspto.gov/RDMS/MPEP/current.
[8] *Cf. Hoffman v. Impact Confections, Inc.*, No. 08cv1597 BTM(NLS), 2010 WL 99072, at *1 (S.D. Cal. Jan. 6, 2010) ("Without the surface shading, there would be confusion as to whether certain parts of the design are lower or higher than others.").

| D649 Patent | Indefiniteness |
|---|---|
|  | Figure 3 does not contain any surface shading or cross-sectional views, particularly with respect to the center section of the body. No other figure in the D649 Patent contains surface shading or cross-sectional views. |

As demonstrated above, the claimed design does not "contain a sufficient number of views to constitute a complete disclosure" of a single embodiment, nor are the existing drawings "clear and complete"—that is, "the design sought to be patented is left to conjecture." MPEP § 1503.02; *see also* 35 U.S.C. § 112(b) (the claim does not "particularly point[] out and distinctly claim[] the subject matter which the inventor … regards as the invention"). The D649 Patent discloses **a single embodiment** in which the drawings of a single decanter are consistent with each other but indefinite as a whole. *Compare* Dkt. No. 68-1 (Ex. A) ("The ornamental design for a decanter, as shown and described," and seven views of the same decanter), *with* MPEP § 1504.05 ("The specification should make clear that multiple embodiments are disclosed and should particularize the differences between the embodiments. If the disclosure of any embodiment relies on the disclosure of another embodiment for completeness to satisfy the requirements of 35 U.S.C. 112, first paragraph, the differences between the embodiments must be identified either in the figure descriptions or by way of a descriptive statement in the specification of the application as filed.").

With no surface shading or even cross sectional views, there are at least **several possible interpretations** for the center section of the claimed design, including:

     i.     a center section with an opening;

    ii.     a center section with front and back surfaces that meet such that there is no liquid between the surfaces; and

   iii.     a center section with front and back surfaces that do not meet, but maintain a distance, such that there is liquid between the surfaces.

Mauro Decl.[9] Ex. 1 at 18. Indeed, the D649 Patent does not include surface shading "to show clearly the character and contour of all surfaces of any 3-dimensional aspects of the design" and "**to distinguish between any open and solid areas of the article**." MPEP § 1503.02 (emphasis added). But in fact, the use of surface shading to distinguish between open and solid areas of a bottle is conventional. *See, e.g.*, Jain Decl. Ex. 7 (surface shading in the body of the water bottle, **excluding** the center section); *id.* Exs. 3, 12 (surface shading in the body of the bottle, **including** the center section). The D649 Patent also fails to include broken lines to indicate internal volume (or the lack thereof), the use of which is also conventional. *See, e.g.*, *id.* Exs. 15–16 (broken lines in the inside of the bottle and decanter).

       Therefore, this Court should hold the claim invalid for indefiniteness. A person of ordinary skill in the art, viewing the design as would an ordinary observer, would not understand the scope of the design—including any open and solid areas—with reasonable certainty. If the D649 Patent is not found invalid, anyone who makes, uses, offers for sale, or sells a decanter would have no way to know the boundaries of the D649 Patent.

---

[9] Declaration of Charles L. Mauro CHFP, dated June 2, 2022, and filed herewith.

**B.** **In the Alternative, This Court Should Adopt Defendants' Proposed Claim Construction Because it Follows Federal Circuit Precedent "to a Tee"**

    **1.** **The Scope of the Claim Is Limited by the Drawings**

First, this Court should "beg[i]n its claim construction analysis by reproducing the [] exemplary figures from the patent and noting its reliance on those drawings." *Lanard Toys*, 958 F.3d at 1342; *see also Egyptian Goddess*, 543 F.3d at 679 ("the court has recognized that design patents typically are claimed as shown in drawings, and that claim construction is adapted accordingly" (internal quotation and citation omitted)); *Mann*, 861 F.2d at 1582 (a design patent "is limited to what is shown in the application drawings"). Both Rémy Martin and Defendants propose this Court start with Figures 1–7 of the D649 Patent. *See* Dkt. No. 103; Dkt. No. 104-1. The seven figures are reproduced below.



To the extent the D649 Patent is not indefinite, then the drawings of the D649 Patent claim an open space (*i.e.*, the center of a "donut") in the center section of the body of the design. The D649 Patent's drawings do not include surface shading, broken lines, or cross-sectional views, and thus do not indicate that the center section of the body of the design has a solid surface. Indeed, the body of the design can be understood to be a "torus" or "donut shape." *See* Mauro Decl. Ex. 1; *see also* Dkt. No. 103 (Rémy Martin alleges its claim covers "a toroidal (wheel-like) shape"). If the center section of the body had a solid surface (*it does not*), then as shown below, Rémy Martin

would have used surface shading in its drawings, as it did in its D369 Patent (Jain Decl. Ex. 14), to indicate as much.

| Rémy Martin's D649 Patent (*No Surface Shading*) | Rémy Martin's D369 Patent (*Surface Shading*) |
|---|---|
|  | |

The surface shading in the drawings of the D369 Patent demonstrates a distinct effort by Rémy Martin to use surface shading to indicate a solid surface. Rémy Martin, in contrast, made a conscious decision not to use surface shading in the drawings of the D649 Patent. Accordingly, the center section of the D649 Patent has an open space.

While this Court should rely on these exemplary drawings, it is necessary to clarify the scope of the protected subject matter by considering: (i) the functional features of the design, as well as the functional purpose of the design as a whole; and (ii) the various features of the claimed design as they relate to the prior art and how the claimed design is distinct from the prior art. After all, a design patent can at most cover a "new, original and ornamental design." 35 U.S.C. § 171(a).

### 2. The Scope of the Claim Is Limited by the Functional Features of the Design and the Functional Purpose of the Design as a Whole

Second, this Court should "consider[] the functional features of the design, as well as the functional purpose of the [decanter] as a whole, including its proportions." *Lanard Toys*, 958 F.3d at 1342. Specifically, this Court should identify and consider the functional aspects of the claimed design because design patents only protect "ornamental" designs. *See* 35 U.S.C. § 171(a). "Where

19

a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997); *see also Egyptian Goddess*, 543 F.3d at 680 ("a trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim," "[t]hose include such matters as … distinguishing between those features of the claimed design that are ornamental and those that are purely functional").

The scope of the claim of the D649 Patent does not protect at least the following functional features, and their respective functional purposes, of the design.

| Functional Feature | Functional Purpose |
|---|---|
| Stopper | "Designed to improve gripping by the person gripping and twisting the top of the stopper. Facet configuration improves grip stability, reduces force and slippage during removal and refitting of the stopper element of the claimed design." Mauro Decl. Ex. 1 at 11. |
| Upper protruding flange | "Designed to reduce slippage during common use patterns while the bottle is being held in the hand of the user. The protruding flange reduces the probability of the user dropping the bottle during entire use sequence of the bottle." *Id.* at 11. |
| Cylindrical neck | "Designed to reduce slippage during common use patterns while the bottle is being held in the hand of the user. The cylindrical neck element reduces the probability of the user dropping the bottle during entire use sequence of the bottle." *Id.* at 11. |
| Lower neck indent | "[D]riven by the need to affix or print a label to the cylindrical section of the bottle without causing the label to become misaligned or wrinkled during the process of affixing the label in production of the final bottle." *Id.* at 12. |

20

| Functional Feature | Functional Purpose |
|---|---|
| Neck-body transition | "[D]esigned to smooth the flow of liquid during the pouring segment of a typical use case." *Id.* at 12. |
| Overall circular shape of the body | "[D]ictated by purely functional requirements related to grasping and manipulation of the bottle during common use patterns. The overall circular shape of the main body section allows the user to grasp the bottle and position the pour spout in a wide range of angles by gripping the bottle in an unlimited number of positions as required to easily pour contents from the bottle regardless of the amount of liquid remaining and the amount of liquid to be dispensed." *Id.* at 13. |
| Facets running around the outer edge of the body and terminating at the center section of the body | "[D]ictated by the purely functional requirements of the grasping biomechanics of the human hand. The physical design of this portion of the main body of the design allows the user's hand to form a secure grip around the shape of the bottle at any relative orientation." *Id.* at 14. |
| Open center section of the body (to the extent it is not indefinite) | "[D]ictated by human hand grasping biomechanics which require partial closure of the hand around the container during dispensing of the liquid in order to achieve greatest grip control and secure handling of the overall bottle during manipulation of the bottle in common use patterns. The center section of the overall shape of the main body of the bottle allows the user's fingers to close around the exterior shape of the bottle at any point around the primary radius of the main bottle shape. This is the optimum biomechanical closure for the user's hand around the container, thus producing a highly functional main body configuration." *Id.* at 15. |

| Functional Feature | Functional Purpose |
|---|---|
| Proportion of the outer edge of the body versus the center section of the body | "[A]llows for the grip of the user to close around the shape into an optimum biomechanical position thus reducing the probability of dropping the bottle or spilling contents due to misalignment with the glass when the liquid is being dispensed. The distance from the outer edge of the main body section and the inner portion is dictated by human hand size anthropometric data for the range of human hand sizes that will be interacting with the bottle during dispensing of the liquid." *Id.* at 16. |
| Flat bottom of the body | "[D]esigned to functionally increase the stability of the bottle on the shelf and to improve stability during uncapping and recapping the bottle before and after dispensing liquid during normal use." *Id.* at 17. |

And it follows that the functional features listed above compel the functional purpose of the decanter as a whole:

1. "Task 1: Initial gripping and lifting of the bottle from storage location by hand";

2. "Task 2: Transport of the bottle to location of dispensing action";

3. "Task 3: Stabilization of bottle and removal of stopper from bottle";

4. "Task 4: Orientation of the bottle over secondary container for optimal pouring";

5. "Task 5: Pouring liquid from container in highly controlled manner to desired level";

6. "Task 6: Stabilization of bottle and insertion of stopper back into bottle"; and

7. "Task 7: Transport of bottle back to storage location and safe release of bottle from hand."

Mauro Decl. Ex. 1 at 4.

Therefore, each of the above listed features is purely functional and not within the scope of the protected subject matter of the D649 Patent.

### 3.      The Scope of the Claim Is Limited by the Prior Art References

And third, this Court should "point out various features of the claimed design as they relate to … the prior art." *Lanard Toys*, 958 F.3d at 1342 (internal quotation and citation omitted).[10] The *Lanard* district court, for example, considered prior art references, both cited by the examiner and identified by the defendant, in its claim construction analysis, and recognized "the overall appearance of [plaintiff's] design [wa]s distinct from th[e] prior art only in the precise proportions of its various elements in relation to each other, the size and ornamentation of [one design element], and the particular size and shape of [another design element]." 2019 WL 1304290, at *12. And the Federal Circuit in *Lanard* noted, "**as a matter of claim construction**, the district court undoubtedly considered the points of novelty of the patented design over the prior art," and "s[aw] **no error** in the district court's approach to claim construction." 958 F.3d at 1342–1344 (emphases added) (the district court "construed the claim consistent with the drawings and pointed out the ornamental and functional features of the design as well as the various features as they relate to the prior art" **before** it "proceeded to the question of infringement"). Indeed, the scope of a design patent claim must be viewed in the context of the prior art because design patents only protect "new" and "original" designs. *See* 35 U.S.C. § 171(a).

Here, it goes without saying that a decanter is neither "new" or "original." *Cf.* Dkt. No. 44 ¶ 3 ("its legendary Louis XIII de Rémy Martin decanter, upon which Plaintiff's Rémy Martin XO Cognac bottle is based, … was based on a flask discovered on a historic battlefield in France"). In construing Rémy Martin's claim, this Court should consider the numerous prior art references cited by the examiner on the face of the D649 Patent, as well as the additional references identified by Defendants. The following are examples of prior art references that are substantially similar to the

---

[10] *See also Egyptian Goddess*, 543 F.3d at 680 ("point out … various features of the claimed design as they relate to … the prior art").

D649 Patent and—to the extent the claim is not indefinite—necessitate an extremely narrow construction.

| D649 Patent | Prior Art |
|:---:|:---:|
|  |  |
|  |  |
|  |  |

24

| D649 Patent | Prior Art |
|:-----------:|:---------:|





| D649 Patent | Prior Art |
|---|---|



| D649 Patent | Prior Art |
|:---:|:---:|
|  | |

As noted in Section Argument B.2 above, certain elements of the decanter—including the stopper, upper protruding flange, cylindrical neck, lower neck indent, neck-body transition, overall circular shape of the body, facets running around the outer edge of the body and terminating at the center section of the body, center section of the body, proportion of the outer edge of the body versus the center section of the body, and flat bottom of the body—are dictated by their individual functional purpose and the functional purpose of the decanter as a whole. And as demonstrated by the prior art references, those are purely functional elements whose utility has been known and used in the art for well over a century. The D649 Patent cannot cover these general design concepts as they are neither new nor original. At most, ornamental differences (*if any*) between the D649 Patent and prior art references are what would be protected.

Accordingly, to the extent it does not find the claim indefinite, this Court should adopt Defendants' proposed construction, set forth in Dkt. No. 104-1, as it conforms with the Patent Act and Federal Circuit precedent.

**C.   This Court Should Reject Rémy Martin's Proposed Claim Construction Because it Conflicts With Federal Circuit Precedent and Renders the D649 Patent Indefinite**

    **1.   The Scope of the Claim Should Not Be Reduced to a Detailed Verbal Description**

Rémy Martin's proposed "verbal description" is contrary to well-established law. Rémy Martin has proposed an eight paragraph verbal description, but as *Egyptian Goddess* and its progeny have made clear, district courts should forego detailed verbal descriptions and instead rely on the drawings in construing a claim of a design patent. The Federal Circuit specified:

> Given the recognized difficulties entailed in trying to describe a design in words, **the preferable course** ordinarily will be for a district court not to attempt to "construe" a design patent claim by providing a detailed verbal description of the claimed design. … [T]he court should recognize **the risks** entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole.

*Egyptian Goddess*, 543 F.3d at 679–80 (emphases added).[11] District courts—including this district court—have taken this guidance to heart. *See, e.g.*, *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, No. 15 Civ. 10154 (PAE), 2018 WL 3773986, at *14 (S.D.N.Y. Aug. 9, 2018) (Engelmayer, J.) ("To the extent [a party] seek[s] a detailed verbal construction of the Design Patent, the Court declines the invitation."); *Hutzler Mfg. Co., Inc. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211 (PGG), 2012 WL 3031150, at *5 (S.D.N.Y. July 25, 2012) (Gardephe, J.) ("In accordance with *Egyptian Goddess*, 543 F.3d at 679, this Court will not provide a detailed verbal description of the [design patent] and will rely instead on the illustrations set out [therein]."); *Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 360 (S.D.N.Y. 2009) (Holwell, J.) ("District courts following *Egyptian Goddess* have generally relied on patent drawings to construe design

---

[11] While the Federal Circuit states that it is "**unwise** to attempt a full description of the claimed design," it does command a detailed analysis of the functional features, functional purpose, and prior art references. *Egyptian Goddess*, 543 F.3d at 680 (emphasis added); *see also supra* Sections Argument B.2–B.3.

claims. This Court will follow suit …." (internal citations omitted)), *aff'd*, 374 F. App'x 956 (Fed. Cir. 2010).[12] Even before *Egyptian Goddess*, this district court recognized it should not attempt a detailed verbal description of the claimed design. *See, e.g.*, *Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 326 (S.D.N.Y. 2002) (Conner, J.) ("When construing a design patent, the process of claim construction must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words." (internal quotation and citation omitted)).

Despite the Federal Circuit's explicit caution against adopting a "detailed verbal description" of a design patent claim, that is exactly what Rémy Martin proposes this Court do. Even if it was not wholly improper (*it is*), Rémy Martin's verbal description is completely inaccurate because it attempts to broaden the scope of the protected subject matter. *See Egyptian Goddess*, 543 F.3d at 679 ("As the Supreme Court has recognized, a design is better represented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration." (internal citation and quotation omitted)); MPEP § 1503.01 ("as a rule the illustration in the drawing views is its own best description"). And contrary to Rémy Martin's attempted justification for such a detailed verbal description, its proposed construction says not one word about functionality (or the alleged lack thereof). Rémy Martin's effort to reduce what is claimed in the figures to a detailed verbal description only serves to distort and improperly expand the scope of its claim.

---

[12] Sister courts have also followed *Egyptian Goddess*' instructions not to provide a detailed verbal description. *See, e.g.*, *Saverglass, Inc. v. Vitro Packaging, LLC*, 130 F. Supp. 3d 747, 751–53 (E.D.N.Y. 2015) (design patent for a bottle); *Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, 630 F. Supp. 2d 273, 282 (W.D.N.Y. 2008).

2. **The Scope of the Claim Is Not Limited by Rémy Martin's Proposed Definition of "a Decanter"**

Rémy Martin also conflates design patents and utility patents and attempts to define "a decanter." As an initial matter, there is no need to define the claim language. As both the Federal Circuit and the parties have acknowledged, design patents, and the D649 Patent in particular, are claimed as shown in **drawings**. *See supra* Section Argument B.1. But even if a definition of "a decanter" was proper, let alone necessary (*it is neither*), Rémy Martin's proposed definition is both baseless and incorrect. Rémy Martin argues that "a decanter" is as "a decorative glass container for wine and other alcoholic drinks, with a part that fits into the top for closing it," but provides not one citation in the claim construction table. Dkt. No. 103. Instead, this Court and Rémy Martin should look to the U.S. Patent and Trademark Office (the "USPTO"). The USPTO defines a "decanter" as a "**[d]esign with an appearance of a bottle or jar that includes a pouring feature**," which "[i]ncludes combination of sugar container and creamer with stand." Jain Decl. Ex. 1 (emphasis added). Neither the D649 Patent nor the prior art references cited on the face of the patent are limited to "a decorative glass container for wine and other alcoholic drinks." Indeed, they claim, *inter alia*, "a decanter," "a bottle," "a water bottle," and "a fragrance bottle."

On one hand, Rémy Martin is attempting to improperly expand the scope of its claim drawings by rendering them into a detailed verbal description; but on the other hand, Rémy Martin is attempting to limit its **claim language** in a desperate attempt to foreclose prior art references, including those cited by the examining attorney. Neither attempt should be allowed.

3. **The Scope of the Claim Is Rendered Indefinite by Rémy Martin's Proposed Claim Construction**

As addressed above, while the D649 Patent is indefinite as it exists, Rémy Martin's own construction seeks to improperly expand the scope of its claim such that the claim is rendered unbounded and indefinite. A cursory examination of Rémy Martin's proposed claim construction

proves that it created its own enablement problem. <u>First</u>, on one hand, Rémy Martin alleges its claim covers "**a toroidal (wheel-like) shape**" (Dkt. No. 103 (emphasis added)), which this Court previously held "means shaped like a donut" (Dkt. No. 59 at 2 n.2). On the other hand, Rémy Martin also alleges its claim covers a "**recessed flat center**." Dkt. No. 103 (emphasis added). Both cannot be true. <u>Second</u>, Rémy Martin alleges a side surface that is "substantially flat," but that has "truncated portions." *Id.* Once again, both cannot be true. <u>Third</u>, Rémy Martin's construction equates "quadrilateral" and "trapezoidal." *See id.* ("quadrilateral/trapezoidal"). While all trapezoids are quadrilaterals, all quadrilaterals are **not** trapezoids. And <u>fourth</u>, Rémy Martin uses "either … or …"—which means A **or** B, but not A and B—throughout its construction. *Id.* That is, Rémy Martin is attempting to improperly shoehorn multiple embodiments into a single decanter design. Rémy Martin's proposed construction is internally inconsistent and incompatible with the law. If this Court adopts Rémy Martin's proposed construction, then one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the construction.

Thus, to the extent it does not find the claim indefinite as it exists, this Court should abide by the directives of *Egyptian Goddess* and adopt Defendants', not Rémy Martin's, proposed construction.[13]

**D.    This Court Should Not Consider Rémy Martin or Sire Sprits' Bottles, Let Alone Compare the D649 Patent to Sire Spirits' Bottle, in Claim Construction**

Rémy Martin's request for an in-person hearing "to present Your Honor for his inspection the different bottles at the crux of this matter, namely, Rémy's patented DIAMANT bottle and its

---

[13] If this Court finds that a detailed verbal description is proper (*it is not*), then this Court should still consider the functional features, functional purpose, and prior art references. *See supra* Sections Argument B.2–B.3.

trade dress and the Branson Bottle that infringes them both" (Dkt. No. 98) demonstrates a fundamental lack of understanding of claim construction.

As an initial matter, construing a claim and comparing a claim to an accused design are two separate and distinct steps in patent infringement litigation. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) ("Determining whether a design patent claim has been infringed requires, **first**, as with utility patents, that the claim be properly construed to determine its meaning and scope. **Second**, the claim as properly construed must be compared to the accused design to determine whether there has been infringement." (emphases added) (internal citation omitted)); *see also Lanard Toys*, 958 F.3d at 1341 ("Determining whether a design patent has been infringed is a **two-part test**" (emphasis added)). Here, this Court simply ordered the parties to undertake the first step of the infringement analysis—that is, the parties were ordered to present their "proposed constructions" so this Court can "decide the proper construction." Dkt. No. 92. Thus, Sire Spirits' bottle—the Branson Cognac X.O. bottle—should not be considered at this stage of the action.

Moreover, "claim construction, from which an infringement analysis depends, focuses on the recited limitations of the *claims*, **not on the features of a commercial embodiment of the invention**." *Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 15 (Fed. Cir. 2020) (emphasis added); *see also Egyptian Goddess*, 543 F.3d at 679 ("design patents typically are claimed as shown in **drawings**" (emphasis added) (internal quotation and citation omitted)). A commercial embodiment of a design patent has zero role in claim construction, and to the extent the Centaure de Diamant Cognac and Rémy Martin X.O. Cognac bottles are even commercial embodiments of the D649 Patent (*they are not*), they should not be considered at the Markman hearing. *See Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06CV01191 ERW, 2007 WL 4564196, at *26 (E.D.

Mo. Dec. 21, 2007) ("[T]he Federal Circuit cautions against trial judges making claim construction determinations on the basis of the commercial embodiment of the invention."). In any event, Rémy Martin, on information and belief, has not offered to sell or sold its Centaure de Diamant Cognac in the United States at any time and has not offered to sell or sold its Centaure de Diamant Cognac anywhere in the world in almost a decade.[14] That is, the Centaure de Diamant Cognac bottle is not readily available for Sire Spirits, Vetroelite, or this Court—let alone the general public—to examine.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court determine the design patent claim is invalid as indefinite. In the alternative, Defendants respectfully request that this Court adopt Defendants' proposed construction that is limited by the drawings, functional features and functional purpose, and prior art references—that is, a narrowed construction that is fully consistent with *Egyptian Goddess* and its progeny. Rémy Martin's efforts to circumvent patent law jurisprudence and rewrite its claim should not be allowed. The D649 Patent is indefinite

---

[14] Rémy Martin's Annual Reports indicate that it only sold its Centaure de Diamant Cognac in duty free stores in Singapore, China, and Russia from 2010 to 2013. *See* Rémy Cointreau, Rapport Annuel 2010-2011 Rémy Cointreau 14 (2010 – 2011), https://www.remy-cointreau.com/app/uploads/2013/04/rc-ra-201011.pdf ("Dans le cadre de sa politique d'innovation, Rémy Martin a bénéficié en 2010 du lancement de *Centaure de Diamant*, à **Singapour [Singapore]**, destiné au *Travel Retail*." (emphasis added)); Rémy Cointreau, Rapport Annuel 2011-2012 Rémy Cointreau 16 (2011 – 2012), https://www.remy-cointreau.com/app/uploads/2012/07/RA_RC_2011-2012_VF-1.pdf ("Plus haut encore dans la gamme des cognacs exceptionnels, *Centaure de Diamant*, lancé en exclusivité en *duty free* l'an dernier, commence désormais à être dégusté sur le marché domestique, notamment en **Chine [China]**." (emphasis added)); Rémy Cointreau, Rapport Annuel 2012-2013 Rémy Cointreau 11 (2012 – 2013), https://www.remy-cointreau.com/app/uploads/2013/07/RA_2012-2013_VF-1.pdf ("Encore plus haut de gamme, *Centaure de Diamant*, aboutissement de la maturation de centaines d'eaux-de-vie soigneusement sélection-nées, et initialement exclusivement réservé au circuit *duty free*, s'impose progressivement depuis un an comme le privilège de l'élite chinoise fortunée. Désormais disponible en **Russie [Russia]** depuis cette année, il commence à y incarner la quintes sence du savoir-faire de la Maison Rémy Martin." (emphasis added)).

at worst and extremely narrow in scope at best, and no amount of verbal elaboration will change that.

Dated: New York, New York
       June 2, 2022

Respectfully submitted,

**AKERMAN LLP**

By:  */s/ Reena Jain*
    Craig Weiner
    Reena Jain
    1251 Avenue of the Americas, 37th Fl.
    New York, NY 10020
    Tel.: (212) 880-3800
    Fax: (212) 880-8965
    craig.weiner@akerman.com
    reena.jain@akerman.com

    Brian C. Bianco (*pro hac vice*)
    Kourtney A. Mulcahy (*pro hac vice*)
    71 South Wacker Drive, 47th Fl.
    Chicago, IL 60606
    Tel.: (312) 634-5700
    Fax: (312) 424-1900
    brian.bianco@akerman.com
    kourtney.mulcahy@akerman.com

*Counsel for Defendant Sire Spirits, LLC*

**PRYOR CASHMAN LLP**

By:  */s/ Jeffrey L. Snow*
    Brad D. Rose
    Jeffrey L. Snow
    Matthew S. Barkan
    Felicity S. Kohn
    7 Times Square
    New York, NY 10036
    Tel.: (212) 421-4100
    Fax: (212) 326-0806
    brose@pryorcashman.com
    jsnow@pryorcashman.com
    mbarkan@pryorcashman.com
    fkohn@pryorcashman.com

*Counsel for Defendants Vetroelite Inc. and Vetroelite S.p.A.*